HARRY J. SIMMONS, Appellant, v. ROLLA WELLS, Receiver of United Railways Company of St. Louis.—20 S. W. (2d) 659.

Division One, September 13, 1929.

*James J. Milligan* for appellant.

*T. E. Francis* and *Ernest A. Green* for respondent.

RAGLAND, J.—Action for personal injuries.

On the night of April 17, 1921, between 9:30 and ten o'clock, plaintiff was a passenger on one of defendant's street cars which was proceeding north on Grand Avenue, in the city of St. Louis. He was intending to leave the car when it reached Chouteau Avenue and take another car at that point for Webster Groves where he lived. He was sitting on the rear platform—"in that round seat in the rear." As the car approached Chouteau Avenue the conductor announced change of cars for Maplewood and Meramec Highlands. Plaintiff remained seated for a second or two and until the conductor opened the door of the rear vestibule. This he did with an automatic device which opened the door and lowered the step on the outside. After the door was opened plaintiff walked slowly over and stepped down onto the step. The car was then moving slowly—at the rate of a mile an hour. It was the custom of defendant, known to plaintiff, to not open the door until the car came to a full stop: plaintiff supposed the car had stopped when he walked to the door preparatory to getting off. He discovered, however, when he stepped down onto the step that the car was still in motion, and he stood there waiting for it to come to a stop. While he was so standing the car "made a sudden spurt:" "picked up speed very suddenly and then almost simultaneously it came almost to a dead stop:" "it made a sudden lurch—it jumped—just as if something was the matter with the brakes." The next that plaintiff knew he was lying against the curb on the east side of Grand Avenue.

The foregoing are the facts and circumstances attending the receipt of the alleged injuries for which plaintiff sues, as detailed by him from the witness stand.

One other witness, a Mrs. Snelbacher, who was also a passenger on the car and who got off at Chouteau Avenue, testified: "The car gave a sudden lurch before it came to Chouteau Avenue . . . the lurch made me sit down suddenly in my seat."

This action was commenced September 10, 1923. The filing of the petition on that date was the first notice that defendant had of any claim on the part of plaintiff that he had been thrown from one of the cars operated by defendant or that he had suffered any injuries whatever while a passenger on any of such cars. Defendant's rules required all conductors and motormen to make and file written reports of all accidents or casualties occurring in connection with the operation of the cars: none was ever filed with respect to the one which plaintiff claims happened and caused him injury. Both the motorman and the conductor who were operating the car in question testified that they were unable to recall any sudden or violent lurch or jerk of the car or the occurrence of any such incident as that described by the plaintiff.

At the time of the alleged injury the plaintiff was about fifty-four years old; he had served for sixteen years as a soldier in the army of the United States; he was then employed in an executive position in the Boy Scouts organization. At the time he claims to have been thrown from the car, and for some months afterward, he supposed that he had sustained mere bruises and injuries of a minor nature. Later certain nervous ailments and a disease of the bones, osteitis, developed, and these he attributes to his original injury. On the trial it appeared that plaintiff was afflicted with syphilis and that of itself was sufficient to have caused the osteitis. He offered to show that the syphilis was, or could have been, latent in his system and caused to become active by the bruises and injuries sustained through being thrown from the car, or, if active, to have been aggravated thereby. The trial court sustained defendant's objection to the evidence on the ground that the petition gave no notice of such a claim.

The petition contained three assignments of negligence, two of which were abandoned by plaintiff. The one on which the cause was submitted was as follows:

"That defendant, his agents and servants were negligent and careless in permitting and causing the rear doors of the said street car to be opened and remain open while the street car was still in motion and in suddenly and violently diminishing or increasing the speed of the street car, causing a sudden, unusual and violent jolt, jerk or lurch before reaching the regular stopping place, when they knew, or by the exercise of ordinary care might have known, the plaintiff was likely to be thrown from the rear step and platform and injured."

The answer consisted of a general denial and a plea of contributory negligence.

For the plaintiff the court instructed the jury that, if they found that the defendant was negligent "in permitting or causing the rear

doors of the said street car to be opened and remain open while the car was still in motion; in suddenly and violently diminishing or increasing the speed of said car; and in causing a sudden, unusual and violent jerk, jolt or lurch before reaching the regular stopping place," and that as a result of such negligence plaintiff sustained injury, their verdict should be for the plaintiff.

At the instance of defendant the court gave, among others, the following instruction, numbered 6:

"The court instructs the jury that the plaintiff, as a passenger upon defendant's street car assumed the ordinary and usual risks and hazards incident to the riding upon the step and rear platform of defendant's street car while the doors thereof were open; and even though you find and believe from all the evidence that while plaintiff was so riding upon said step or rear platform, with the doors of the street car open, he was caused to be thrown from said street car by the street car suddenly stopping, jerking, jolting or lurching, still he would not be entitled to recover provided you further find that the street car stopped, jerked, jolted or lurched in the ordinary and usual manner."

The court refused to give an instruction lettered "B," requested by plaintiff, as follows:

"The court instructs the jury that even though you should find and believe from the evidence plaintiff had a blood disease in his system or had any disease latent in his system generally, still if you find and believe from the evidence that he was injured as a direct result of the negligence and carelessness of defendant, then the court instructs you that defendant is responsible to plaintiff for all effects which naturally and necessarily followed resulting directly from the injuries, if any, in the condition of health in which plaintiff was at the time, and it is no defense that the injuries, if any, may have been aggravated and rendered more severe by reason of plaintiff's state of health, or that by reason of latent diseases the injuries, if any, were rendered more serious to him than they would have been to a person of robust health."

The jury returned a verdict for defendant and judgment was given accordingly. From such judgment plaintiff prosecutes this appeal.

Appellant assigns as error: (1) The giving of defendant's Instruction 6; (2) the exclusion of the evidence tendered for the purpose of showing that the injury sustained by plaintiff as the immediate result of his propulsion from the street car could have caused latent syphilis to become active; and (3) the refusal of plaintiff's Instruction B.

I. 1. The first complaint lodged against defendant's Instruction 6 is based on its statement that plaintiff "assumed the ordinary and

usual risks and hazards incident to the riding upon the step." The substance of appellant's contention is this: Defendant by opening the doors impliedly invited plaintiff to alight from the car; plaintiff in response to such invitation walked across the platform and stepped down onto the step preparatory to getting off; he was therefore riding on the step at the implied direction of defendant, and consequently assumed none of the risks incident to so doing. Where it is the custom of the operator of street cars to not open the door of a car until it has reached a regular stopping place and come to a full stop, a passenger having no knowledge to the contrary, and such lack of knowledge is due to darkness or other conditions calculated to mislead him, may assume when the doors are opened that the car has reached such a stopping place and has stopped. [Tillery v. Harvey, 214 S. W. 246; Cooley v. Dunham, 196 Mo. App. 399, 195 S. W. 1058.] But to the passenger who knows, or in the exercise of ordinary care would know, that the car is still in motion the opening of the doors is not an invitation to alight, or even to step down onto the step preparatory to alighting. [Kirby v. United Railways, 242 S. W. 79; Delegarder v. Wells, 258 S. W. 7.] When plaintiff stepped from the platform down onto the step, he discovered that the car was still in motion. He could have returned to the platform and waited for the car to stop: he chose instead to remain on the step. It seems clear that in so doing he assumed the *ordinary and usual* risks incident to riding upon the step.

2. Appellant next challenges defendant's Instruction 6 on the ground that it directed the jury to return a verdict for defendant, if they found "that the street car stopped, jerked, jolted or lurched in the ordinary and usual manner,"—ignoring the fact of the open door. The petition contained three separate assignments of negligence: (1) The opening of the door; (2) the sudden, violent and unusual lurch of the car; and (3) the opening of the door *and* the sudden, violent and unusual jerk or lurch of the car. But the cause was submitted, at plaintiff's instance, on the third alone. It was the theory of that assignment that plaintiff's injury was caused by the concurrence of the two acts; and that was the theory of his instruction. Under that theory neither the open door nor the lurch of the car, taken singly, produced his injury; it required both, operating concurrently. If therefore plaintiff failed to establish either by his proof he was not entitled to recover. The instruction was not erroneous in so directing the jury. [Giles v. Railroad, 278 Mo. 350, 212 S. W. 873; Kirn v. Harvey, 200 Mo. App. 433, 208 S. W. 479.]

3. Appellant makes the further contention that his principal instruction and defendant's Instruction 6 are conflicting. He says:

"The court's instruction numbered 1 given for the plaintiff authorizes the jury to find for the plaintiff if they found defendant negligent in opening the car door before coming to a stop, and allowing it to remain open and causing a sudden, unusual jolt, jar or lurch, while defendant's Instruction 6 contradicts it expressly by stating that plaintiff assumed the ordinary risks and hazards incident to riding upon a back platform or step with the door open."

As stated, the negligence hypothesized in plaintiff's instruction was the opening of the door *and* the permitting of the car to jerk or lurch in an unusual manner. It must be conceded that defendant's instruction eliminated the open door as a causal agency in producing plaintiff's injuries, and properly so. Plaintiff's independent voluntary act in remaining on the step after he discovered that the car was in motion intervened and broke the causal connection and itself became the proximate cause in so far as the open door was concerned. The case should have been submitted only on the charge that the car was caused to jerk, lurch, etc., in an unusual manner. [See Kirby v. United Railways Co. and Delegarder v. Wells, supra.] The conflict, if any, between the instructions is engendered by the error in plaintiff's and is not therefore a ground for reversal of the judgment.

4. Appellant assigns error with respect to the giving of defendant's instructions numbered 4 and 5. This assignment is not covered by the points and authorities in his brief and for that reason could be treated as abandoned. However, these instructions were of similar tenor to defendant's Instruction 6 and for the reasons indicated in the preceding paragraphs were properly given.

II. The petition alleged that osteitis was one of the injuries plaintiff sustained as a direct result of his propulsion from the street car. When it appeared from the evidence during the trial that plaintiff was afflicted with syphilis and that syphilis was in and of itself an efficient cause in producing osteitis, plaintiff offered evidence tending to show that latent syphilis could be caused to become active by trauma, or, if active, could be aggravated by such physical violence as he received from being thrown from the car. Defendant objected on the ground that there was no basis in the pleading for such proof, and the court sustained the objection. It will be assumed, without deciding, that the ruling was erroneous. The question then is: Was the error prejudicial, the jury having found

890

the issues as a whole for defendant? Some further statement of the facts is necessary.

The trial occurred in February, 1926—almost five years after plaintiff's alleged injury. A month or two before the trial he was subjected to the Wasserman test: That test disclosed that he had syphilis and that the disease was in the tertiary stage. Plaintiff testified that prior to that time he not only had never been treated for syphilis, but had no idea that he was so afflicted. The medical evidence tended to show that in his case the disease was congenital, and further, that syphilis, whether congenital or acquired, often remains latent in the system for years—may in fact never become active.

It appears that prior to April 17, 1921, the date of the alleged street car incident, plaintiff was active and physically vigorous—enjoying robust health in fact. Thereafter he was an invalid. His testimony as to the manner in which he received his injuries and his physical condition immediately following will be briefly summarized: The right side of his head and his right shoulder struck the side of the street curb and his right hip the pavement simultaneously. He was stunned and dazed for a few seconds. He was helped up and then walked limpingly to another street car and rode home. He was unable to sleep that night on account of pain in his head, right shoulder and right hip: he was confined to his bed for a week thereafter: he called no physician, but his wife rubbed him with liniment and applied hot-water bottles from time to time, giving him some relief. After a week's confinement he was able to be driven to his office in St. Louis each day, where he remained but one hour: occasionally he had to omit these visits for two or three days. This situation continued during the month of May. About the first of June, his wife took him in an automobile to the Boy Scouts' camp near Ironton, Missouri, where it devolved upon him to superintend the nature studies and physical activities of the campers. He remained there until September: during that time he hobbled around with the aid of "two sticks," or else was carried by the boys on a cot: and he was treated almost daily by an osteopath. His condition did not improve, and on that account he found it necessary to resign his position with the Scout organization, January 1, 1922. During all of the period just covered he suffered pain intermittently —in his right shoulder and hip and in his head: he also experienced dizziness and vertigo. Following his first week of confinement a large hernia developed in the right inguinal canal: he was still unable to raise his right arm above his shoulder at the time of the trial.

There was no suggestion in the evidence that any of the conditions just described was caused by syphilis or was in any way, directly

or indirectly, traceable to it. There was no evidence tending to show when the syphilis became active or when the bone inflammation set up. It merely appears that the osteitis could have been caused in the first instance either by trauma, such as the physical violence plaintiff claims to have suffered, or by syphilis. The bones affected were those forming the pelvis, the right parietal bone of the skull and the femurs—at their upper ends. Whether the inflammation of these bones, or the active syphilis, occurred first in point of time was not shown.

On the state of the evidence at the time the ruling in question was made, that with reference to syphilis tended to negative one element of the damages claimed by plaintiff, namely, the osteitis: the proof which he tendered and which was excluded was for the purpose merely of sustaining and fortifying his case as to that one element. The damages aside from the osteitis were not trivial: they were substantial. The finding of the issues in their entirety for defendant clearly indicates that the verdict was in no wise affected by the ruling complained of. On the record as a whole the finding for defendant on the merits may well be attributed to the paucity of plaintiff's evidence and the staleness of his claim. The case of Rosenzweig v. Wells, 273 S. W. 1071, cited by appellant, is not in point.

III. An instruction given by the court fully covered every element of the damages recoverable under the pleadings and the evidence. It was silent, however, on the subject of plaintiff's condition of health at the time he received his alleged injuries. Plaintiff's Instruction B was evidently offered to meet that phase of the evidence. There was no pretense or suggestion at any time during the trial that "a blood disease" in plaintiff's system or "a disease latent in his system generally" was a defense to his action. The evidence as to syphilis was elicited by defendant on the cross-examination of plaintiff's medical witnesses: the defendant himself offered no independent evidence with respect thereto. Construed in the light of the evidence Instruction B related merely to the measure of damages. For the reasons set forth in preceding paragraphs its refusal, if error, was not prejudicial.

The judgment of the circuit court is affirmed. All concur.