H. B. WESTENHAVER, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation.—102 S. W. (2d) 661.

Division Two, March 11, 1937.

*Cope & Hadsell, E. L. Moore, Cowgill & Popham* and *John F. Cook* for appellant.

512

*J. W. Jamison* and *Mann, Mann & Miller* for respondent.

514

WESTHUES, C.—This case comes to the writer on reassignment. Appellant, Westenhaver, obtained a verdict in the sum of $15,000, against the respondent railroad company, as damages for personal

injuries sustained as the result of a collision of two railroad cars, in the city of Monett, Missouri. The trial court sustained a motion for new trial and appellant, plaintiff below, appealed. The order granting a new trial reads:

"Now comes on for hearing defendant's motion for a new trial heretofore filed herein. By consent said motion is taken up and upon being seen, heard and fully understood by the Court, the same is sustained, on the grounds that the Court committed an error in submitting plaintiff's instruction marked number one to the jury on the grounds that there is no evidence upon which to base said instruction, also on the ground that the verdict rendered by the jury is not supported by the evidence in the case, and further on the ground that the defendant's demurrer to the testimony should have been sustained."

The only questions briefed by respondent are, that the evidence was not sufficient to sustain the verdict or Instruction No. 1, and that the verdict was grossly excessive. Appellant contends that the trial court erred in sustaining the motion for new trial.

Plaintiff's evidence justifies the following statement of facts: Plaintiff, on April 11, 1929, was aiding in the unloading of automobiles from a railroad car of defendant, which had been spotted at the unloading platform or dock. It became necessary in the unloading process to use a crane. A Buick car, upon which a crane had been mounted, commonly known as a wrecker, was backed up to the railroad car, and the crane was placed on the inside for the purpose of lowering an automobile which had been raised to the ceiling when the car was loaded. While this work was in progress another railroad car ran into and collided with the car in which plaintiff was at work. The witnesses, when describing the collision, stated that there was a terrific crash, a rebound, and a second crash when this car struck another car standing upon the track. Plaintiff testified that when the car in which he was working was first struck he fell upon his back, that at the rebound, or second crash, he slid almost half of the distance of the car and crashed into an automobile in the railroad car. The railroad car moved about seventy-five or one hundred feet as a result of the impact. Before the crash, there was a railroad car standing upon the tracks to the east, and one to the west of the car wherein plaintiff was working. After the crash there was a railroad switchman and a switch engine to the east of the point of collision. Plaintiff received no warning of the approach of the switch engine, or of any disturbance to be made of the car in which he was at work.

The railroad company did not offer any evidence, except as to the extent of plaintiff's injuries. On the part of the railroad the only explanation we find of the collision is in the opening statement, by the attorney, in which he said:

"Now, the train crew couldn't understand why this engine didn't

stop when the brakes were applied. They got out and went back to see, and they found oil on both rails of the track. There isn't any question about that. They will say they found it. . . . How it got there, I don't know. The burden is on them to prove it when he charges us with the negligence, but certainly the men in charge of that engine, neither the engineer nor the fireman, nor the switch foreman nor none of the three switchmen knew) anything about the two rails of that track being oiled. They had never noticed particularly about any of the tracks being oiled because when only one rail is oiled it doesn't affect their operation there at all, but, of course, when two are oiled it does affect them. There was oil found on the ball of both rails and is what caused the engine to slip and fail to stop. Now, we say that wasn't negligence on our part.

"One of their charges in this case is that we failed to warn Westenhaver that we were going to move that car. Well, we had no intention of moving that car, no intention of touching that car, at least until after we came back, that switch engine came back from working passenger train No. 4, and then, of course, they probably would have had to have moved that car in the switching operations in spotting other cars, and everybody around that car that was working in it then of course would have been notified."

To determine the questions presented on this appeal we are concerned with three charges of negligence contained in plaintiff's petition. They are: First, negligently permitting the top surface of the rails to be oiled; second, excessive speed of the switch engine and cars; third, failure to warn plaintiff of the approach of the switch engine and cars. The instruction given, which was mentioned in the order granting a new trial as not being supported by evidence, read as follows:

"The court instructs the jury if you believe from the evidence that Mr. Perry the consignee of said automobiles, employed and instructed plaintiff to enter the freight car and assist in unloading same, and that said car was spotted and standing for said purpose at the unloading platform and on the tracks and in the yards of defendant, if you so find, and that defendant knew plaintiff had gone into said car and was in same for said purpose, if you so find, and that defendant had unnecessarily and negligently, if you so find, caused and permitted the top surface of said rails leading to said automobile car to be oiled and thereby made slippery and unusually difficult to operate and control said switch engine on, if you so find, and negligently, if you so find, then and there caused and permitted said switch engine and cars to move over said track and towards said automobile car at dangerous speed, if you so find, and that thereby the safety of plaintiff in said car was endangered by defendant, if you so find, and that defendant negligently, if you so find, failed to

warn plaintiff of said danger, if any, and of the approach of said switch engine and cars on said track towards said automobile car, if you so find, and that as a direct result of the aforesaid negligence of defendant, if you so find it was negligent, the collision of said cars referred to in evidence occurred and plaintiff was thereby injured, if you so find, then your verdict must be for plaintiff, Mr. Westenhaver, and against defendant.''

It will be noted that the instruction required the jury, before authorizing a verdict for plaintiff, to find that the defendant railroad company was guilty of all three of the charges of negligence. Respondent's theory may be better understood by quoting from its brief, wherein it is stated:

''(a) The theory of the plaintiff as to the negligence and resulting liability of defendant, as shown by the petition and his Instruction No. 1, is that the oil upon the rails, together with the excessive speed of the engine under 'the condition and circumstances then and there existing,' that is to say, the concurrence of the oil on the rails, and the failure to warn, and not either alone, constituted a chain of circumstances or connected facts which produced his injury. Therefore, proof of all is required and if plaintiff failed to establish negligence as to either, he is not entitled to recover.''

The record discloses, beyond doubt, that plaintiff received no warning. Excessive speed may be legitimately inferred from the evidence, because all of the witnesses who testified on this subject stated that there was a terrific crash, very unusual, and that it lifted the car at least two feet from the tracks and moved it about seventy-five or one hundred feet, dragging with it the wrecker, which had been backed against the car with the crane on the inside. Respondent contends that no warning was necessary unless the train crew intended to move the car. There was no evidence introduced, or offered, that the train crew did not intend to move the car. The only mention of that fact was made in the statement of the attorney for the railroad. That, of course, cannot be considered as evidence in its favor. The only reference to oil and grease being on both rails of the track was made by the attorney for the railroad in his opening statement to the jury. It is contended, by respondent, that such a statement cannot take the place of evidence, and that in spite of such statement plaintiff had the burden to prove such fact. As to this question see Cole. v. St. Louis-San Francisco Ry. Co., 332 Mo. 999, 61 S. W. (2d) 344, l. c. 346 (1). Again respondent says in substance that even if the statement be considered as an admission, still the railroad would not be guilty of negligence unless the oil had been on the rails a sufficient length of time to impart notice; that no such showing was made. For the purpose of this opinion we need not discuss these questions, but concede that the charge of negligence of permitting the rails to be oiled was not sustained by the evidence.

We are of the opinion that respondent is in error in its contention that plaintiff was required to prove all three of the charges of negligence to sustain a verdict. In Simmons v. Wells, 323 Mo. 882, 20 S. W. (2d) 659, 1. c. 661, cited by respondent, the plaintiff, riding upon a street car, was injured, when, by an unusual lurch of the car, he was thrown from the car steps where he was standing preparatory to getting off. It was plaintiff's theory that the conductor had opened the door as an invitation to get off; that when he reached the step he noticed the car was still moving so he waited for it to stop; then by a sudden jerk or lurch he was thrown from the step. It was held that plaintiff had the burden of proving both charges of negligence because it required the concurrence of the two acts to render the defendant liable. We have no fault to find with the principle of law as applied to the facts in that case. It is apparent that had the door not been opened the plaintiff could not and would not have been standing upon the steps of the car, and had there been no unusual jerk or lurch plaintiff would not have had a cause of action, but that is not the situation in this case. The movement of the car in the usual manner of switching without notice to the plaintiff, causing injury, would justify a finding that the railroad was guilty of negligence. So an unusual impact, caused by excessive speed, would sustain a verdict for plaintiff, even though he had been notified. The concurrence of the three charges of negligence, that is, the oil upon the rails, excessive speed, and failure to warn, was not necessary to render the railroad company liable. Nor do we find that that was plaintiff's theory in the trial of the case. We are of the opinion that this case should be governed by the rule of law announced in the cases of Gettemyer v. Thies, 51 S. W. (2d) 868, 1. c. 869 (1); Tash v. St. Louis-S. F. Ry. Co., 335 Mo. 1148, 1. c. 1163 (3), 76 S. W. (2d) 690, 1. c. 697 (3, 9); Corbin v. Kansas City, C. C. & St. J. Ry. Co., 41 S. W. (2d) 832, 1. c. 837 (7); Berry v. Baltimore & Ohio Ry. Co., 43 S. W. (2d) 782; Webster v. International Shoe Co., 18 S. W. (2d) 131, 1. c. 133 (4). In the latter case the St. Louis Court of Appeals said:

"Appellant contends that the court erred in giving said instruction because it allowed the jury to find alleged facts not proven by the evidence, or in support of which no evidence had been submitted.

"We have already ruled above that plaintiff made out a case for the jury upon the first assignment of negligence set out in this instruction. In this situation, since the two acts of negligence were submitted in the conjunctive and there being evidence to support the one, the fact that the evidence may have been insufficient to warrant the submission of the other, namely, that the needles were not tempered properly, cannot be viewed as prejudicial to any rights of the

defendant, since plaintiff, in requiring in its instruction as a prerequisite to a finding in her behalf such an additional finding, merely assumed an unnecessary burden.''

That principle of law is applicable to the case at hand.

The trial court gave, at respondent's request, five instructions. These instructions were most favorable to respondent. Numbers 4 and 7 cast the burden upon the plaintiff to prove that the movement of the car was caused by the negligence of the defendant, and also that the fact that the car was suddenly moved would not justify a finding of negligence. Number 5 informed the jury that the mere fact that oil was found on the rails would not be sufficient to find that the defendant was negligent in this respect, but the jury, to so find, should believe that the oil was negligently placed upon the rails by defendant's employees, or that it had been there for a sufficient length of time to charge the defendant with knowledge of its presence. Instruction No. 6 pertained to the degree of proof required on the question of failure to warn. The last instruction, No. 8, given at respondent's request, read as follows:

''The Court instructs the jury that it has submitted to you, for your determination, by instruction Number One, several alleged acts of negligence on the part of the defendant. You must, before you will be warranted in returning a verdict in favor of the plaintiff and against the defendant, find that the defendant was guilty of each and all of such acts of negligence, as therein defined, and that each directly caused plaintiff's injuries. If you should find that the defendant was guilty of neither of said acts of negligence, or if you should find that it was guilty of one or the other, but not of all of said acts of negligence, then it will be your duty to return a verdict in favor of the defendant.''

The evidence amply justified the finding that respondent was negligent in two respects, and this, under the authorities was sufficient to sustain a verdict for plaintiff, irrespective of the fact that the instructions required the jury also to find negligence with reference to the oil being on the track, which charge was not supported by evidence.

Respondent contends that the verdict was grossly excessive, therefore, the trial court's order granting a new trial may be sustained for that reason. The trial court made no reference to this in its order. The evidence, as to plaintiff's injury, presents this situation, that if the plaintiff and his doctors are to be believed, then the verdict cannot be said to be excessive, but, if the defendant's evidence, as testified to by a number of eminent physicians, is to be believed, then the verdict is grossly excessive. As a rule, when a court finds a verdict to be grossly excessive, it considers the injuries sustained as proven by the plaintiff's evidence. Illustrative of this principle see

Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S. W. (2d) 1079, l. c. 1083 (14); Brunk v. Hamilton-Brown Shoe Company, 334 Mo. 517, 66 S. W. (2d) 903, l. c. 910 (26); Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654, l. c. 659 (18); Carpenter v. Wabash Ry. Co., 335 Mo. 130, 71 S. W. (2d) 1071, l. c. 1075 (4). Appellant, before the accident, was a large, strong man, about fifty-seven years of age. He had been a railroad engineer for many years, but was not employed at that occupation at the time of the accident. The evidence of plaintiff and his doctors justifies the finding that plaintiff sustained serious and permanent injuries, due to an injury to his head causing concussion of the brain and affecting his vision. Dr. Hastings testified that he treated plaintiff for twenty-six months and that in addition to the head injury plaintiff's injuries consisted of a severe sacroiliac sprain, injury to the coccyx or tail bone, and an injury to his fifth lumbar vertebra, which caused intense pain and suffering; that plaintiff's injuries were permanent and he would be unable to perform manual labor; that he would continue to suffer great pain, and that his entire nervous system was affected. Plaintiff testified he was in bed for more than two months and then used crutches; that at the time of the trial he was walking with the aid of a cane; that he had not been able to do a day's work since the accident. The testimony of the plaintiff and Dr. Hastings was corroborated by a number of doctors of excellent reputation and standing. These doctors had made an examination of plaintiff and had also taken numerous X-ray pictures which they found disclosed the injuries to his back as above set forth. It is true defendant introduced evidence by medical experts and X-ray experts of excellent standing, who had examined plaintiff, to the effect that they were unable to discover any material injury to any part of plaintiff's back. So the question resolved itself to this, if the jury believed the plaintiff and his witnesses, the verdict was not excessive. The injuries received by plaintiff in this case, taking plaintiff's evidence as true, were far more serious than the injuries sustained by the plaintiffs in the cases of Zichler v. St. Louis Public Service Co., and Carpenter v. Wabash, supra. Taking these and other cases cited as a guide we are not authorized to disturb the verdict in this case.

The order and judgment of the trial court, granting respondent a new trial, is, therefore, reversed and set aside with directions to the trial court to reinstate the verdict and enter judgment as of the date the verdict was returned. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.