R. E. WILDAY v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—147 S. W. (2d) 431.

Division Two, February 1, 1941.

*Carl S. Hoffman, W. H. Martin* and *Montgomery, Martin & Montgomery* for appellant.

*W. W. McCanles* and *Fred F. Wesner* for respondent.

BOHLING, C.—R. E. Wilday recovered a judgment of $16,000 against the Missouri-Kansas-Texas Railroad Company, a corporation, for the loss of his left leg and other personal injuries. The action is under the Federal Employers' Liability Act. The railroad appealed and presents issues involving the sufficiency of the evidence, Wilday's main instruction and the refusal of certain withdrawal instructions.

Respondent, who had been employed by appellant for about twenty years as a brakeman, was head brakeman on one of appellant's local freight trains and was injured at ·Moody, Kansas, October 26, 1936, when his left foot was temporarily caught between the reinforcing (commonly called guard) and switch-point rails of a "channel" switch. Appellant's main line extends in a generally north and south direction at Moody and is intersected by the Missouri Pacific railroad tracks. East of the main line track is a passing track. Appellant's train was traveling south, the engineer being on the west side. At Moody, an oil tank car billed to St. Louis, Missouri, was to be switched to the interchange track, which is east and off of the passing track, for delivery to the Missouri Pacific. The train stopped north of the south passing track switch and respondent "cut" the train, gave the "go ahead" signal, rode the oil tank car to the switch, and stopped the cars so that the north end of the oil tank car was about 8 or 10 feet south of the switch. Respondent crossed the track, north of the cars, to the switch stand east of the track. It was re- spondent's intention to ride the cars to the interchange track. There is testimony of record that in switching operations brakemen may give signals to the fireman or to the engineer; that respondent could have given the signal to the fireman, but that it was the practice and custom to work on the engineer's side whenever practicable; that due to the curvature to the left of the passing track, a brakeman, to be in a conspicuous place to give signals as the cars move around the curve, would have to be on the engineer's side. The switch point on the west side of the main line track deflected the cars east to the passing track and the west switch-rail point was considerably worn apparently, from the photographs, for a distance of a foot or more back. It was also established that in the circumstances engines move only on signal. Respondent testified that he, after some difficulty, threw the switch for the passing track; that he at no time signaled for any movement of the cars; that he started to cross the track to look at the switch and place himself on the engineer's side of the cars; that he stepped on something which threw him off balance,

caused his left foot to cut short its step and to come down on the east reinforcing and switch-point rails; that he didn't have time to examine the position of his foot but it dropped in between said rails, seemed to be twisted and was caught; that he tried to jerk it out two or three times but was unsuccessful; that something directed his attention to the fact the cars were backing up on him; that if he had had a second or two more he could have seen how it was and could have removed his foot; that he threw himself to the east of the track and the cars passed over his left leg, necessitating its amputation, and he suffered injuries to his back.

Appellant contends it was a physical impossibility for respondent to have temporarily caught his foot, as respondent testified, in the space between the reinforcing and switch-point rails of the switch.

The reinforcing rail extended parallel to and west of the switch-point rail for approximately 9 feet. It had what is known as a "ball" on top. The switch-point rail had no "ball" at the point but as it extended north gradually tapered out to a regular rail. Separating these rails and spaced approximately equidistant along the rails were three blocks, approximately 3 inches wide. Respondent testified his foot was caught a few inches north of the south block, which was approximately a foot north of the point of the switch-point rail. The soles of respondent's shoes were approximately 4-3/8 inches wide at the widest point. The distance between the two rails was approximately 4-1/2 inches at the ball or top of the rails, but below the ball the distance was approximately 6 inches, and the distance between the flanges on the bottoms of the rails was about 2 inches.

The record discloses that at the trial the switch rails and a model of the switch rails involved were produced, and that respondent there demonstrated the manner in which he thought his foot became temporarily caught or wedged between the reinforcing and switch-point rails. The record does not detail the exact manner in which this was demonstrated, but we understand the demonstration indicated the sole of respondent's left shoe caught underneath the flange of one of the rails with the other side of his shoe wedged or squeezed tightly against the wall of the opposite rail. During respondent's cross-examination and demonstration with the switch itself, the following occurred: "Q. Start with your foot, how you stepped on it? A. It was my other foot as I said, I stepped on something like that and my toe doubled up or I slipped or something so darn quick I can't tell just how it went in there but it did go in. It will go either way. It can fasten on this side or this side, either way, and you can't pull it out. Q. Turn your foot? A. Right there it is. If I had had a second or two more I could have seen how it was and I could have gotten my foot out. Q. Sure you can hook the sole of your shoe over the edge where you did? A. That is the way it was."

Mindful of the many movements of which the human foot is capable, especially when forced, we think, in view of the demonstration before the jury and counsel's comment thereon, a holding that respondent's catching his foot temporarily between the rails was an impossibility would be an invasion of the province of the jury. The point is ruled against appellant.

Mention is made in appellant's argument of the fact that respondent's foot, after the accident, was not caught and was on the switch-point rail and within an inch of the south spacing block. With the cars moving north appellant argues respondent's foot would have been moved to the north and not a short distance south nearer the switch point than it was when caught. This ignores the fact that respondent's foot was not completely severed but after the accident remained attached to his leg by means of a small ligament or ligaments, possible movements of respondent's body during the occurrence or a possible slight back throw from the wheel just as it passed over respondent's leg. Appellant also argues that respondent could have seen the switch points and could have given the signal to the fireman and questions respondent's reasons for starting to cross the track. While we think these matters not controlling, the worn condition of the west switch-point rail and the greater facility in signaling the engineer may have prompted respondent's action.

Appellant complains of respondent's main instruction. This instruction, among other things required findings that respondent started across the track "for the purpose of examining the west switch point . . . and *thereafter to give the engineer a signal* to move said string of cars backward, . . ." and that there was a long established custom for enginemen to move only upon a signal, "and that said rule, custom and practice was well known to the plaintiff *and the defendants' engineer and fireman . . .*," and "that the plaintiff *did not* at said time and place *give a signal to the defendants' fireman and engineer* to back up said engine . . ., and that *they* did not receive a signal from plaintiff so to do . . ., and without receiving said signal to back up, if *they* did not, the *defendants' fireman and engineer* caused, allowed and permitted said engine and string of cars to be moved backward . . . and to run into, strike and injure plaintiff, *and that* in all the foregoing respects the *defendants' engineer and fireman were guilty of carelessness and negligence* as carelessness and negligence are elsewhere defined in these instructions, *and that as a direct result of said carelessness and negligence of said fireman and engineer, in whole or in part,* the plaintiff was struck and injured, and that plaintiff did not assume the risk," the verdict should be for respondent. (Italics ours.)

Appellant asserts error in that there was no evidence upon which to predicate negligence on the part of the engineer (which we need not discuss) and that the jury by its verdict, under said instruction,

found the engineer guilty of negligence. The instruction is subject to the construction given it by appellant and is not to be commended. However, the Federal Employers' Liability Act provides: "Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . ., for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . ." [45 U. S. C. A., Sec. 51, 35 Stat. 65, Sec. 1.] The instruction submitted all issues, not in the alternative but, in the conjunctive. Under the law, if the fireman was negligent, but the engineer was not negligent, in the particulars specified, respondent was entitled to recover from appellant and the error, if error, placed an unnecessary burden on respondent, did not prejudice appellant's rights, and (the findings of the jury being otherwise sufficient to support the judgment) is of no avail to appellant. [Grasher v. Kansas City Public Service Co. (Mo. App.), 35 S. W. (2d) 645, 646[1]; Sec. 1062, R. S. 1929, Mo. Stat. Ann., p. 1352.] Rulings upholding instructions submitting several specifications of negligence in the conjunctive where the evidence sustains an affirmative finding on some but not all of the specifications submitted and necessary to a recovery are analogous. For instance: Wolfe v. Payne (Banc), 294 Mo. 170, 186(IV), 241 S. W. 915, 919[6]; Westenhaver v. St. Louis-S. F. Ry. Co., 340 Mo. 511, 519, 102 S. W. (2d) 661, 665[5]; cases cited in Grasher v. Kansas City Public Service Co., supra; Consult Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 76[8], 85 S. W. (2d) 126, 133[16, 17].

One of appellant's instructions informed the jury that before respondent could recover the jury should find two essential facts, briefly stated, viz.: 1st, that respondent's left foot became caught and, 2nd, that the cars, without respondent giving any signal, were negligently backed, injuring respondent. Respondent's instruction required a finding of these and other facts.

The use of the plural in referring to "defendant" in the instruction was not reversible error. Jurors should be credited with common discernment and common sense and in the instant case must have understood reference was to the engineer and fireman employed by appellant railroad. [Kloeckener v. St. Louis Public Service Co., 331 Mo. 396, 404[4], 53 S. W. (2d) 1043, 1045[7]; Meng v. St. Louis & Suburban Ry. Co., 108 Mo. App. 553, 563, 84 S. W. 213, 215; Hudson v. Kansas City Rys. Co. (Mo.), 246 S. W. 576, 578[5] Larey v. Missouri-Kansas-Texas Rd. Co., 333 Mo. 949, 955[1], 64 S. W. (2d) 681, 683[1].]

Appellant complains because the clause "and that plaintiff did not assume the risk" was not explained in the instruction, stating the case, as submitted, did not involve such issue. Appellant's answer alleged respondent assumed certain risks. The clause conditioned a recovery upon a finding respondent had not assumed the risk. If

such finding was not necessary for a recovery, the instruction placed an unnecessary burden on respondent and no danger existed of the jury being misled or confused to appellant's prejudice. [See Page v. Payne, 293 Mo. 600, 623(VII), 240 S. W. 156, 163[13, 14].

The expression "in whole or in part" is found in the Federal Employers' Liability Act, and appellant fails to point out wherein its use in the instruction does not harmonize with said law. [Consult 45 U. S. C. A., Sec. 53, 35 Stat. 66, Sec. 3.] Appellant's contention is overruled.

Appellant submitted two instructions withdrawing respondent's abandoned specification of negligence respecting a warming of the back-up movement. Appellant says one of said instructions would have been sufficient and should have been given because it would have "lessened or restricted the field in which the jury was forced to wander to find negligence on the part of the engineer" under respondent's main instruction. Our ruling with respect to negligence on the part of the engineer disposes of the instant contention. A finding that the fireman was negligent, which respondent's instruction also required in the conjunctive, sustains the judgment. Respondent's instruction contains no reference to a warning, and the refusal of instructions withdrawing abandoned issues has been held not reversible error. [Berry v. Baltimore & O. Rd. Co. (Mo.), 43 S. W. (2d) 782, 786[2].]

The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.