EVAN D. FRANCIS v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—No. 39573.—193 S. W. (2d) 909.

Division Two, April 8, 1946.

Motion for Rehearing or to Transfer to Banc Overruled, April 30, 1946.

*Warner Fuller* and *Arnot L. Sheppard* for appellant.

1236

*Roberts P. Elam* and *Rene J. Lusser* for respondent; *Tautges, Rerat & Welch* of counsel.

1238

WESTHUES, C.—Respondent, Francis, obtained a judgment against appellant, Terminal Railroad Association, in the sum of $40,000 in a personal injury action. The railroad company appealed. In the course of this opinion the parties will be designated as plaintiff and defendant.

Plaintiff was in the employ of the defendant as a pipefitter's helper. On October 14, 1943, Gastorf, a pipefitter also in the employ of defendant, was assigned to the task of stopping a leak in an expansion joint of a pipe carrying steam to the trains at the Union Station in St. Louis. Plaintiff was Gastorf's helper on this assignment. The defective expansion joint was in a conduit box about four feet square and five feet deep, which was located between tracks seven and eight at the southerly end of the train sheds of the Union Station. There was no sidewalk between these two tracks, but there was a space of about seven feet. The covering for this conduit consisted of two heavy metal doors or lids. Gastorf and plaintiff removed these lids and placed them to the south of the conduit. They were compelled to wait about twenty minutes before beginning their work because of the heat caused by the steam. Gastorf then attempted to tighten the expansion joint and in doing so broke a bolt thereby causing more steam to escape. Plaintiff was sent for a new bolt and when he returned it was found that the threads thereon had

to be extended to enable it to be used in tightening the expansion joint. Gastorf went to a machine shop of the defendant for the purpose of cutting the threads on the bolt. He left plaintiff to guard the vacuum to prevent anyone from falling therein. The steam escaping from the pipes obscured vision. Plaintiff was standing on the northerly side of the vacuum. A train of cars was standing on track number eight extending beyond and south of the conduit. Wabash passenger cars were standing on track number seven to the north. This train of cars, however, did not extend to the conduit and the southerly end was several hundred feet to the north thereof. While plaintiff was thus guarding the conduit a Wabash engine was backed northerly upon track seven at a speed of about five miles per hour. This engine struck plaintiff resulting in serious injury.

Plaintiff bases his right of recovery upon the provisions of the Federal Employers' Liability Act. The grounds of negligence relied upon are two: First, that no warning was given of the approaching engine, and second, that defendant was negligent in failing to furnish plaintiff a reasonably safe place in which to work. Defendant urges that plaintiff is not entitled to recover in this case because the negligence, if any, was the act of the trainmen employed by the Wabash, and in this connection defendant urges that sections 5162 and 5163, Mo. Rev. St. Ann., R. S. Mo., 1939, do not apply to the Terminal Railroad Association of St. Louis. (More of this later.) Defendant also contends that plaintiff failed to introduce evidence sufficient to sustain a charge of negligence against the Wabash employees for a failure to warn; that the evidence was insufficient to sustain the charge that defendant failed to furnish plaintiff a reasonably safe place in which to work.

■ We will dispose of defendant's points in the order stated. All reference to sections of the Missouri statutees will refer to the Missouri Revised Statutes Annotated, Revised Statutes of Missouri, 1939. Defendant ■ in its brief stated the question as follows:

"Do Sections 5162 and 5163, R. S. Mo., 1939, affect this question? The former provides that any railroad which leases to a foreign corporation or permits it to use its railroad, shall remain liable for the acts of the other. The latter provides that whenever any railroad, street railway or other railway company shall permit any other corporation, under any running agreement, to run cars upon its road or track in this state, the owner corporation shall be liable for the acts of the user."

Defendant insists that the sections do not govern because the rights of the parties are controlled by the provisions of the Federal Employers' Liability Act without regard to any state statute or decisions. It may be conceded that the federal act controls the case over any state statute or decision which may be contrary to the provisions of

the federal act. The provisions of sections 5162 and 5163, in so far as applicable to this case, in no way conflict with the federal act. Those sections authorize a person situated as plaintiff is to sue the defendant company for personal injuries sustained in connection with the operation of trains upon the defendant's tracks, whether they be defendant's trains or the trains of some other company using defendant's tracks. Defendant says that the sole theory for holding a lessor company liable in such cases is that the owner will not be permitted to escape performance of its duty to the public, and that the defendant is strictly performing its public duty and therefore the sections do not apply. The sections are not subject to the interpretation placed thereon by the defendant. The legislature has seen fit to grant a person situated as plaintiff to sue the defendant company or the Wabash. There are good reasons for the statute. In many instances it would be difficult for an injured person to determine whether the negligence causing injury was that of the lessor or lessee. Take for example the case at bar. Defendant earnestly insists that the rules of the defendant-company did not require the operators of the Wabash engine to sound a warning of its approach. It was conceded that the defendant company was in control. Its rules governed train movements. Smith v. Henwood, 349 Mo. 396, 161 S. W. (2d) 232, l. c. 236 (3). We hold the sections do apply to the defendant company. See Clark v. Atchison, T. & S. F. R. Co., 319 Mo. 865, 6 S. W. (2d) 954, l. c. 958, 959 (2, 4) (5) (6), where many of the points made by the defendant are discussed and decided adversely to its contention. Defendant, however, says that it is bound under the law to permit the Wabash to use its facilities and therefore has no choice and should not be held liable. We do not see how that could change the situation. All public utilities must serve the public indiscriminately. So the defendant must serve all railroads coming into the city indiscriminately. Merely because the defendant company must permit the use of its facilities to the various railroads does not take from the defendant control over operations. The point must be ruled against defendant.

The next point relied upon by the defendant is that the evidence failed to show any duty on part of the enginemen to give a warning. It is insisted that no proof of a custom was made, nor was it shown that the rules of the defendant company required a warning to be given. This, on the theory that plaintiff was an employee working in the yards and therefore it was his duty to be on the lookout. We will not discuss the question of whether a custom was proven, or whether the rules of the defendant company required a warning, for the reason that plaintiff's petition is sufficient to base a recovery upon the theory of a common law duty to warn. The case was submitted to a jury on such a theory and we are of the opinion

that the evidence was ample to submit such a question to a jury. Both the engineer of the Wabash and the fireman operating the engine in question testified that they did not see plaintiff; that there was a cloud of steam or vapor which obscured their vision. The engineer testified that he could see the rails or track, but the fireman, who was on the side where plaintiff was, said he could not see the east rail near which plaintiff was standing and that he knew something was wrong because of so much steam. In such circumstances it was a question for a jury to decide whether ordinary care required a warning to be given before proceeding blindly through the cloud of vapor where men were expected to be at work and where plaintiff had been assigned to work. Men were expected to be in that locality because plaintiff's duty was to guard against anyone falling into the open conduit. Defendant, however, says a warning was given; that a number of witnesses so testified. Plaintiff testified he heard bells ringing on engines on other tracks to the east, but did not hear a bell ring on the Wabash engine on track seven; that he heard no warning of any kind; that he did not know the engine was on track seven and did not know what struck him until some time afterward. Plaintiff's evidence was sufficient to authorize submitting the question to the jury. In Borrson v. Missouri-Kansas-Texas R. Co., 161 S. W. (2d) 227, l. c. 231 (11) (12, 13), this court said:

"It necessarily follows that if negative evidence is admissible its weight is for the jury and the appellant's instruction that positive evidence was entitled to more weight than negative evidence was properly refused. Johnson v. Springfield Traction Co., 176 Mo. App. 174, 161 S. W. 1193."

As to what plaintiff was doing at the time he was struck he testified on cross-examination as follows:

"You intended to stay in the clear of track No. 7, didn't you? A. Yes, sir.

"Q. Because the train on track 8 wasn't moving you didn't have to worry about that? A. No, sir.

"Q. The only track you had to worry about was track 7, wasn't it, at that time? A. Yes.

"Q. So if anything came along you wouldn't get hurt? That is what you intended to do, wasn't it? A. Yes, sir.

"Q. But instead of doing that you got over within twelve or eighteen inches of that track without realizing where you were, didn't you? A. Probably did."

. . .

"I was looking towards track 8, looking south in a stooped position like that (indicating), so I could see through there. There was a

little wind blowing, so I could see over there if anybody came around there.''

"I had my back towards track 7."

"Stooped over a little bit, so if anybody was coming around, coming off that platform and coming around, so they wouldn't fall in the hole."

Plaintiff may have been guilty of negligence in inadvertently stepping close to track number seven, however, his negligence would not defeat recovery but only go to mitigating damages. An instruction covering this point was given at defendant's request. Also submitted to the jury was the question of whether plaintiff's negligence was the proximate cause of his injuries and not any negligence of the defendant.

Another question briefed was that the trial court erred in submitting the case to the jury on the theory that the defendant failed to provide plaintiff a reasonably safe place to work. Defendant says the safe place rule is not applicable because at the time plaintiff was injured he and Gastorf were attempting to stop the escape of steam, the very thing which plaintiff claims made his place of work dangerous; that plaintiff was engaged in the task of rendering safe the very defect which he now claims made his place of work unsafe. The following cases were cited: Kansas City S. Ry. Co. v. Billingslea, 116 Fed. 335; Stone v. Mo. Pac. R. Co., 293 S. W. 367; Pritchard v. Thompson, 348 Mo. 832, 156 S. W. (2d) 652. We believe the defendant to be in error. Plaintiff was not injured through any incident connected with his work. Therein lies the distinction in the cases cited and the case at bar. The escaping steam was not the sole cause of the danger. Plaintiff was not injured by the steam. The place was dangerous because of a combination of elements. The escaping steam causing invisibility and the location of the conduit in close proximity to the tracks over which cars and engines were permitted to move at any time without being required to stop before entering the danger zone, all combined to render plaintiff's position unsafe. We hold that the safe place rule was applicable. Bailey v. Central Vermont Ry. Co., 319 U. S. 350, 63 Sup. Ct. 1062, 1. c. 1064 (5, 6)..

The next question is: Did the evidence justify submitting the case to the jury on the theory that defendant was negligent in not providing plaintiff a reasonably safe place in which to work? Plaintiff's case depended upon negligence. Without negligence the defendant would not be liable. The case was so submitted to the jury by the trial court. The jury was authorized to find for plaintiff if plaintiff's injuries were caused through negligence in not providing

a reasonably safe place to work. The trial court correctly interpreted the law. See Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 63 Sup. Ct. 444 and Bailey v. Central Vermont Ry. Co., supra. In those cases the United States Supreme Court passed on and interpreted the meaning of the 1939 amendment by congress of the Federal Employers' Liability Act. A study of those opinions, both the majority and minority, will reveal the court held that by the amendment Congress obliterated the assumption of risk as a defense in any case where an injury to a person covered by the act resulted in whole or in part through negligence of the defendant. In the circumstances and under the evidence we hold that the question of whether defendant in this case was negligent was for a jury to decide. Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S. W. (2d) 568, l. c. 573 (9). In connection with the question of a safe place in which to work the defendant contends in this court that under defendant's rules no duty devolved upon the enginemen to warn plaintiff of the oncoming engine. If that be true, then certainly that was just another element adding to the dangerous condition. A jury could well find that plaintiff's position was unnecessarily dangerous because the enginemen could have been required to stop before entering the danger zone where men were likely to be at work. Bailey v. Central Vermont Ry. Co., supra.

 Appellant assigned error to the ruling of the trial court in permitting plaintiff to answer the following questions: "If that engine bell had been ringing could you have heard it?" Plaintiff answered that he could. Plaintiff was also asked:

"Was there anything about the noise in the manhole that would prevent you from hearing an engine bell ringing, if it was ringing any time while it was within fifty or a hundred feet of where you were standing? A. No, sir; I could have heard it from that distance."

Defendant urges that the questions called for conclusions on part of the witness and that the answers were such. The questions did call for an opinion on the part of the witness, however, plaintiff had been examined with reference to noises interfering with his hearing. Note on cross-examination he was asked:

"So you had two noises there: The noise of the locomotive or the Diesel on track 8 and the hissing steam coming out of that leaky line, didn't you? A. Yes.

"Q. Of course, that interfered with your hearing, didn't it? A. Well, I heard bells from the other side."

The distance to where other bells were ringing was not shown, but they must have been beyond track number eight and therefore some distance away. It would have been difficult to present all the circumstances so a jury could pass intelligently on the question of

whether plaintiff could have heard the bell of the engine on track seven. Defendant cross-examined plaintiff on his ability to hear bells and insisted that the noises prevented him from hearing the warning given him by the enginemen of the Wabash engine. We are of the opinion that in the circumstances it was not error for the trial court to permit the witness to answer the questions. In Harrison v. St. Louis-San Francisco R. Co., 339 Mo. 821, 99 S. W. (2d) 841, l. c. 844 (4), this court quoted with approval the following:

" 'One test of whether opinions of experts should be received "is whether the court or jury will be aided by receiving such evidence." ' "

Plaintiff, while not an expert, was familiar with the surroundings. In 22 C. J., page 528, sec. 611, we find the following:

"The modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness is permitted to state a fact known to or observed by him, even though his statement involves a certain element of inference."

The manner in which plaintiff was questioned, when considered in the light of defendant's contentions and cross-examination, was not error.

■ Finally defendant says that the verdict of $40,000 is grossly excessive. Plaintiff was thirty-eight years of age, earning about $40.00 to $45.00 per week. He had earned a livelihood by hard manual labor. His principal injuries consisted of a fracture of the left humerus, where after healing it was discovered that there was a variation in the alignment; a fractured right clavicle, resulting in a shortening; a separation at the acromio-clavicular joint and also an injury to the left radial nerve. The medical evidence was that plaintiff had been permanently incapacitated for hard manual labor, but that he would in all probability be able to do some light work. In his petition he asks for compensation for such pain and suffering as he has endured in the past and for such as he will likely endure in the future. The evidence was that plaintiff had suffered much pain and would continue to do so. Without reviewing this question at length we will state that we have read and considered the following and other cases on the question of excessiveness of verdicts. O'Brien v. Rindskopf, 334 Mo. ■■■ 1233, 70 S. W. (2d) 1085, l. c. 1093 (10); Noce v. St. Louis-San Francisco R. Co., 337 Mo. 689, 85 S. W. (2d) 637, l. c. 643 (9, 10); Westenhaver v. St. Louis-San Francisco R. Co., 340 Mo. 511, 102 S. W. (2d) 661, l. c. 665 (6, 7); Cason v. Kansas City Terminal R. Co., 123 S. W. (2d) 133, l. c. 141 (12, 13); Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S. W. (2d) 157, l. c. 158, 159 (2, 6), also page 161 (8); Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S. W. (2d) 568, l. c. 577 (30, 31). The latter two

cases mentioned that economic conditions were also to be considered. Giving due consideration to the plaintiff's injuries and the cases above cited it is our conclusion that $25,000 to the plaintiff as damages, including the element of his pain and suffering, will be in harmony with the amounts allowed in cases heretofore decided. If, therefore, plaintiff will within fifteen days file in this court a remittitur in the sum of $15,000, the judgment of the trial court will be affirmed for $25,000 as of the date of the original judgment entered in the trial court, otherwise to be reversed and remanded. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.