CHARLES WRIGHT v. GILBERT SPIELDOCH, Appellant.—No. 39529.—
193 S. W. (2d) 42.

Division One, February 11, 1946.

Rehearing Denied, March 11, 1946.

*Walther, Hecker & Walther* and *Mattingly, Berthold, Jones & Richards* for appellant.

*Mark D. Eagleton* and *Wm. H. Allen* for respondent.

1078

 DALTON, C.—Action for damages for personal injuries alleged to have been caused by the negligence of defendant. Verdict and judgment were for plaintiff for $12,000 and defendant appealed.

On the morning of February 16, 1944, the plaintiff was driving an automobile east on the south side of West Pine Boulevard in the City of St. Louis, between North Court and Euclid Avenues. He stopped for a traffic light at Euclid Avenue and, while waiting for the light to change, his automobile was struck from the rear by an automobile that "kind of slid off the right side of the (rear) bumper," and came to a stop south of plaintiff's automobile. Plaintiff got out on the left-hand side of his automobile and passed in the rear of it to determine the amount of damage, if any, and to obtain the name of the driver of the other automobile. He was returning when the other driver asked him for his card. Plaintiff stopped 4 to 6 inches in the rear of his own automobile, 12 to 18 inches from its south side, and was facing east, looking in his billfold for a card, when an automobile operated by the defendant approached from the west and collided with the rear of plaintiff's automobile. Plaintiff had been standing still for about a minute or a minute and a half. He did not see defendant's automobile or know of its approach. No horn had been sounded, or other warning given. Plaintiff's left leg was crushed between the bumpers of the two automobiles and he received other injuries.

West Pine Boulevard, a public street, was 45 feet in width and was paved with macadam. Two or three days prior to the date of the collision there had been a 3 inch snowfall and, although the weather was such that there had been freezing and thawing, the south side of the street, where the collision occurred, was covered with a sheet of ice. The entire block on the south side of West Pine Boulevard, between North Court and Euclid Avenues, a distance of 240 feet, was occupied by the Forest Park Hotel, a six story building. A solid sheet of ice extended along in front of the hotel for two-thirds of the distance from Euclid to North Court Avenue. Only the north side of the street, and a strip 1½ to 2 feet wide immediately south of the center line of the street, was free of ice. Further west, between North Court Avenue and Kingshighway, a distance of some 600 feet, West Pine Boulevard was, intermittently covered with ice and snow and "the street was in bad shape" for driving. Although plaintiff's automobile had no skid chains and the tires "had been run about forty five thousand miles," the plaintiff, driving at about ten miles per hour, had no difficulty stopping for the traffic light on Euclid Avenue.

Defendant, in his own behalf, testified that, as he drove his automobile east from Kingshighway along the south side of West Pine Boulevard, he was driving about 20 miles per hour and was endeavoring to maintain that speed. When he was some 150 feet away from plaintiff's automobile, approaching "directly in the same line," he saw that the automobile had stopped and that several people were "in back" of it. He couldn't tell what they were doing, but it looked like they were examining something in the rear of the automobile, and he assumed that "something had happened." At that time

defendant was driving about 2 to 3 feet south of the center line of the street. The left side of plaintiff's automobile was located about 2 to 2½ feet south of the center line of the street. The automobile that had first collided with it was stopped immediately to the south and several other automobiles were parked along the south curb. Defendant saw that the traffic light at the intersection was in his favor and "he started to edge over to the middle of the street," thinking he would go around the stopped automobiles. When he saw traffic start west, he "moved back in." He thought he moved 2 or 3 feet to the left, "about to the center of the street," when he saw traffic coming west, and he "moved back" about as far as he had moved over.

Defendant further testified, "I started to pull over and then I pulled back. . . . When I moved back I hit this slick ice and I attempted to stop my car. . . . I put the brake on gradually and tried to slow my speed down as much as I could. . . . I didn't use the emergency brake." The automobile did not respond to the brakes, "it started to skid—started to skid a little bit to the right, and I straightened the car out and I kept on sliding, . . . until the collision. . . . When I hit the ice I started to skid and I righted my car and tried to stop it, and I had slowed down but it was still sliding. . . . There was practically no jolt, because the car was barely moving as it slid in. . . . When I came to a stop I was a little bit to the right of the car in front of me, . . . almost directly behind it." The rate of speed when the automobiles came together was "about five miles an hour; just barely moving."

On direct examination, defendant said he thought he decreased his speed when he pulled to the left, but on cross examination he said he didn't remember whether he reduced his speed at all, until he was within 50 feet of plaintiff's automobile. According to defendant's best recollection, he maintained a speed of approximately 20 miles per hour, until he was within 50 or 60 feet of plaintiff's automobile, and he did not reduce his speed or apply his brakes, until he saw westbound traffic approaching and turned back in line behind plaintiff's automobile. He "pulled back . . . because of the westbound traffic." He was never in the path of the westbound traffic and that was not the reason for putting on his brakes. He put on his brakes because, when he hit the slick ice, he "wanted to stop the car." According to defendant the street in front of the hotel "was intermittently ice and snow and frozen—more or less rough," but about 30 or 40 feet back of plaintiff's automobile "it was almost a slick sheet of ice," and, when he saw he wasn't going to stop, he sounded his horn, "quite a number of times, . . . almost continuously." He was then within 25 to 30 feet of the plaintiff.

Defendant was cross examined as follows: "Q. Now, this last thirty or forty feet, as I understand you, in back of where the . . . car was stopped was slicker and smoother than the rest of the street

on farther west? A. Yes, sir. Q. And that was the part of the street where you began to try to stop? A. Yes, sir. Q. In other words, you waited until you came down to the slickest part of the street before you tried to stop? A. Well, I didn't know how much ice was there or how slick it was. Q. Couldn't you see ahead of you? A. I couldn't tell by looking. Q. This was broad daylight, wasn't it? A. Yes, sir. Q. Was there anything from ahead of you in that thirty or forty feet to prevent your telling it was ice? A. No."

The cause was submitted to the jury on defendant's alleged primary negligence in driving his ''automobile at a rate of speed that was excessive, unreasonable and dangerous under the circumstances existing there as shown by the evidence'' and in failing ''to slacken the speed of his said automobile'' and, also, on negligence under the humanitarian doctrine in failing to give a warning signal of the approach of his automobile and in failing to swerve his automobile away from plaintiff.

Appellant (defendant) contends (1) that the court erred in giving instruction No. 1, submitting primary negligence, because, as a matter of law, ''excessive, and unreasonable rate of speed, and failure to slacken the speed, were not the proximate cause of plaintiff's injuries''; (2) that the court erred in giving instruction No. 2, submitting humanitarian negligence, because ''there was insufficient evidence to support the submission''; (3) that the court erred in submitting the cause to the jury on inconsistent and contradictory theories of negligence since excessive speed was inconsistent with failure to swerve or warn; and (4) that the verdict is grossly excessive.

Appellant's theory, that ''the proximate cause of plaintiff's injury was neither excessive, unreasonable rate of speed, nor failure to slacken the speed of the automobile,'' is essentially based on the false premise that ''all evidence pertaining to the operation of the car must be found in defendant's testimony'' and that all of this evidence must be taken as true. Appellant contends that, ''because of the icy condition of the street, he was unable to bring his car to a stop before the cars came together''; and that, after he swerved and hit the ice, he was ''unable to control the movement of his car.'' Appellant says that ''had he not turned back to the right he would not have struck the plaintiff regardless of the speed at which he was driving''; that it was the act of turning or swerving to the right, when and where he did, and the ''hitting of the smooth stretch of ice approximately 50 feet back of the point of impact which caused the injury''; that ''eighteen or twenty miles per hour was not an excessive speed''; that, ''even if defendant's speed was excessive, at the point where he might have stopped or slackened the speed of his automobile, that cause was broken by his turning to the right toward the plaintiff; and (that) the speed at which he was driving was not the proximate cause.''

█ Appellant relies upon the rule stated in Kane v. Mo. Pac. Ry. Co., 251 Mo. 13, 157 S. W. 644, 648, as follows: "A cause is proximate when by a natural and █ unbroken series of events it produces the injury complained of. . . . 'The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred.' "

█ In determining whether the evidence was sufficient to make a submissible case on the issue of excessive speed and failure to slacken speed, we consider only the evidence most favorable to plaintiff, and the favorable inferences to be drawn therefrom, and disregard the defendent's evidence, unless it aids the plaintiff's case. Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S. W. (2d) 892, 895. Only a part of defendant's evidence aids the plaintiff's case and, accordingly, we may disregard defendant's evidence with reference to his intention to go around plaintiff's automobile on the left, the distance he pulled over and back, if any, the evidence about his automobile hitting the ice, skidding, sliding and going out of control, the brakes not holding and his inability to get traction. Plaintiff was not bound by this evidence, it was not part of plaintiff's case and the jury could have disbelieved it.

█ The evidence, considered favorably to plaintiff, shows that West Pine Boulevard was "in bad shape" for driving; and that, west of North Court Avenue, West Pine Boulevard was intermittently covered with ice and snow, while the south side of the street, for 2/3 of the distance from Euclid to North Court Avenue (2/3 of 240 feet), was a solid sheet of ice. Defendant was driving on this sheet of ice, 2 or 3 feet south of the center line of the street, at about 20 miles per hour. It was about 9 A. M. (daylight) and there was nothing to prevent defendant from seeing that he was driving on a sheet of ice. He saw plaintiff's automobile and plaintiff directly in line in front of him, and only 150 feet away. He further noticed that the cars had stopped and that the way ahead was obstructed, but he did not apply his brakes or slacken speed until he was within 30-40 feet of plaintiff. At that time it was too late to stop the automobile and he slid into the rear of plaintiff's automobile, at about 5 miles per hour.

Defendant was required to exercise the highest degree of care in the operation of his automobile (considering the circumstances there existing) and to drive "at a rate of speed so as not to endanger the property of another or the life or limb of any person." Sec. 8383, R. S. 1939. In view of the circumstances shown in evidence, whether 20 miles per hour was a negligent rate of speed was a question for the jury and, considered favorably to plaintiff, there was no intervening cause, and no sudden 3 foot pull back to the right, or sudden hitting of the ice 30 or 40 feet from plaintiff, because defendant had been driving on solid ice for more than 100 feet before he attempted

to stop and he continued on and struck plaintiff. Even considering defendant's evidence as a whole, the evidence fails to show, as a matter of law, the intervention of any act or event constituting a direct, efficient and producing cause of the collision and injury, or which superseded defendant's negligence as the proximate cause of the injury complained of. Nothing was shown to have happened of such a character that it could be said, as a matter of law, to have made the alleged negligent acts of defendant a remote cause of plaintiff's injury. Defendant's alleged acts in starting to go to the left and turning back to the right, skidding on the ice, righting the automobile and sliding, were all reasonably to be anticipated as a natural result of excessive speed. As a matter of law, they did not supersede defendant's act in driving at an alleged negligent speed or in negligently failing to slacken speed. A jury could find from the evidence that the acts and events relied upon by defendant merely concurred with negligent speed as a producing cause of the injury. ''The 'proximate cause' of an injury, in jurisprudence, is synonymous to 'legal cause,' and is not necessarily restricted to the cause last operating in time and space.'' Hillis v. Home Owners' Loan Corp., 348 Mo. 601, 154 S. W. (2d) 761, 764. Whether the acts and events testified to by defendant were sufficient to break the chain of causation from the alleged negligent speed, and negligent failure to slacken speed, was an issue of fact for the jury. The mere fact that some other act of the defendant may have concurred with the alleged negligent acts relied upon would not excuse the defendant. Gray v. Kurn, 345 Mo. 1027, 137 S. W. (2d) 558, 567; Burger v. Mo. Pac. R. Co., 112 Mo. 238, 20 S. W. 439. The question of proximate cause was for the jury.

Appellant's theory that no case was made under the humanitarian doctrine is based on the proposition that plaintiff was not in a position of imminent peril until defendant turned his automobile ''toward the right and hit the ice.'' Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065, 1067; Roach v. Kansas City Public Service Co. (Mo. Sup.), 141 S. W. (2d) 800, 802. Appellant insists that the only peril that menaced plaintiff was the act of defendant in so turning to the right, which act ''immediately and without time or opportunity for further action on the driver's part produced the injury.'' Ridge v. Jones, 335 Mo. 219, 71 S. W. (2d) 713, 715. Appellant contends that, after plaintiff came into a position of peril, defendant ''had no present ability to avoid striking'' him by swerving away. A position of imminent peril and defendant's ability, thereafter, to avert the impending injury are, of course, essential elements of the humanitarian doctrine. Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482, 484; State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. (2d) 798, 800. To support the application of the rules relied upon, appellant points to his own evidence that ''as he turned to the right his car hit the ice, . . . his car began to skid, he continued to apply his brakes

gradually and righted his car, . . . he could not get his car under control, . . . it kept on sliding forward." This evidence was not binding on plaintiff. As stated, only defendant's evidence showed that the left wheels of defendant's automobile were ever off of the ice; that defendant's automobile *hit* the ice; that the brakes were ever applied; that a horn was sounded; or that the automobile slid, skidded, went out of control and was "righted." The fact that some of defendant's evidence was not directly contradicted by plaintiff's evidence did not require its acceptance by the jury or make it binding on plaintiff. The jury could find that plaintiff was in peril before the alleged turns were made, and that defendant's automobile never so completely changed its direction that plaintiff was out of peril before he was hit. Only defendant's evidence tended to limit the danger zone to 50 feet or less, or tended to limit defendant's ability to avert the injury by swerving away from plaintiff. From defendant's testimony that he "straightened the car out," or "righted" his car, and from other evidence, the jury could infer he steered it directly into the plaintiff, rather than away from him. Defendant admitted that, when he was only 150 feet away, he saw plaintiff directly in the path of his automobile and conceded he was driving 20 miles per hour and made no effort to slow up or put on his brakes until he was 30-40 feet away. Plaintiff had his back to the approaching peril and was oblivious of defendant's approach. A front fender of defendant's automobile struck plaintiff in the back so it appears that only a slight swerve or turn, would have avoided injury to plaintiff. From defendant's evidence that he "righted" his car or "straightened it out," after he turned back and it began to skid and slide, and from other evidence, the jury could infer that, even if the automobile was sliding forward and at the speed mentioned, it could have been turned away from plaintiff and the injury could have been avoided. Steger v. Meehan (Mo. Sup.), 63 S. W. (2d) 109, 110; Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S. W. (2d) 606, 608.

It further appears that plaintiff relied upon defendant's admission as to the rate of speed and sought to show that such rate of speed was excessive, unreasonable and negligent under the circumstances. Defendant, after testifying as to his speed, intention and turns, further testified that he repeatedly sounded his horn to warn plaintiff, in effect, testifying that he had time to and did sound the horn after turning to the right. From this and other evidence heretofore set out, the jury could infer and find that defendant had time to sound his horn and timely warn plaintiff, whether they believed that he did sound the horn or not.

The evidence was sufficient to sustain the giving of the instruction submitting humanitarian negligence in failing to warn and in failing to swerve away from plaintiff. Even if the evidence had been insufficient to support one of the two grounds of negligence,

which were submitted in the conjunctive, the giving of the instruction would not, under prior decisions, have been reversible error. Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S. W. (2d) 568; Burneson v. Zumwalt Co., 349 Mo. 94, 159 S. W. (2d) 605, 610; Wilday v. Missouri-Kansas-Texas R. Co., 347 Mo. 275, 280, 147 S. W. (2d) 431, 434; Tash v. St. Louis-San Francisco R. Co., 335 Mo. 1148, 76 S. W. (2d) 690.

Appellant's contention that the instructions (submitting primary and humanitarian ▪▪▪ negligence) submitted "inconsistent and conflicting theories of negligence" is also based upon defendant's evidence concerning the condition of the street and defendant's conduct in the operation of his automobile, towit, that, when defendant was 150 feet away, he was traveling "upon a part of the street which was spotted as to ice and snow"; that plaintiff was not in peril until defendant turned to the right; and that, when he turned to the right, his automobile "hit the icy surface of the street . . . so smooth and covered with ice that he was unable to control or stop his car." Appellant says that, if he was going at an excessive rate of speed, "such speed made it impossible for him to control his car so, as to swerve away from plaintiff." In effect, appellant contends that, unless the speed was such as to destroy control, there was no excessive speed and, if there was excessive speed, there was no ability to control and, therefore, no humanitarian negligence in failing to swerve or warn.

While the evidence was such that a jury could find that defendant's automobile was operated at a negligent speed, the speed shown was not such that, as a matter of law, we can say there could have been no negligence under the humanitarian doctrine in failing to swerve away and warn. The evidence was sufficient to sustain the giving of the instructions submitting the primary and humanitarian negligence mentioned. The jury could, therefore, have found that defendant was operating his automobile at a negligent and careless rate of speed under the circumstances existing; that he was negligent under the circumstances in failing to slacken speed; and that he was guilty of negligence under the humanitarian doctrine in failing to warn plaintiff and swerve his automobile away from plaintiff after plaintiff was in a position of imminent peril. There was no inconsistency or necessary conflict between the theories of negligence on which the cause was submitted. Williams v. St. Louis Public Service Co., 335 Mo. 335, 73 S. W. (2d) 199, 203; Montague v. Missouri & K. I. R. Co., 305 Mo. 269, 264 S. W. 813, 817; Hillis v. Home Owners' Loan Corp., 348 Mo. 601, 154 S. W. (2d) 761, 764; Hillis v. Rice (Mo. App.), 151 S. W. (2d) 717, 724.

Was the verdict excessive? We consider the evidence most favorable to plaintiff. Becker v. Aschen, 344 Mo. 1107, 131 S. W. (2d) 533, 541. Plaintiff was 54 years of age. For more than 19½ years

he had been employed as a chauffeur by the school board of the City of St. Louis. At the time of his injury, he was receiving a salary of $200 per month. He was in the hospital from February 16th to May 15th. On July 15th he returned to work, but was unable to continue as a chauffeur. Because of his long service with the school board, an extra position was made for him "in the record room," doing clerical work at $171 per month. There is no permanency to this work. He was entitled to "sick leave" and so lost only one month's salary. His expense for hospital and physician's services amounted to $830.

Not only was plaintiff's left leg broken by the force of the collision, but he further received an injury to his back, spine and the left side of his chest. The leg was broken at and below the knee, with a comminuted fracture through the upper end of the tibia (with multiple fragments), a fracture of the fibula in the upper third and "a fracture right at the neck of the fibula." The fracture extended across the entire width of the fibula, and there was a displacement backward that "throws the articulation of the joint askew," and interferes with the mechanics of the leg. The leg was in a cast for several months and the broken bones are now in fair condition, considering the number of small fragments, but some fracture lines have not been completely obliterated. Plaintiff's chief difficulty arises from injuries to the "soft parts" of the knee, including the lateral, medial and crucial ligaments and the two semi-lunar cartilages. There is a lot of play, or free motion in the knee joint, it may be moved backward and forward and the leg may be extended. The ligaments are not functioning and the knee buckles, or gives away on use. It is "absolutely untrustworthy." There is no likelihood of improvement, since the ligaments do not repair like muscle tissue. An operation would merely result in a stiff knee. Plaintiff walks with a crutch and has a definite limp on the left side. He cannot put all of his weight on the left leg. There are scars about the knee joint and the knee has not been free of pain since it was injured. It hurts "all the time."

Plaintiff had had no back, spine or left hip trouble prior to the time defendant's automobile fender struck him on the left hip bone or buttocks bone. He did have what is referred to as an "anomalous back," ▮ a congenital condition, and his back was subject to being easily damaged. Plaintiff suffers with pain and soreness in his back, if he sits very long, goes up steps or moves around. Most of the time he "sits on his right side" to keep pressure off his left hip. He uses a rubber ring to lie on at night in order to be more comfortable. Medical examination discloses a tenderness to pressure over the left lumbar spine, over the left ischium and coccyx—evidence of inflammatory condition in his lumbar spine. The evidence shows that he will have "pain and disability" about this area throughout the remainder of his life.

X-ray pictures of the lower ribs on the left side disclosed no fractures, but cartilage injuries would not show on an X-ray. Plaintiff's 8th rib hurts on manipulation of the thorax and if he moves in certain ways he has "a catch" and pain in the lower rib area.

It is apparent that plaintiff's injuries are serious, painful, disabling and permanent, and much more disabling than those suffered by the plaintiff in the case of Taylor v. Lumaghi Coal Co., 352 Mo. 1212, 181 S. W. (2d) 536, 540, where the plaintiff had no broken bones and was still able to use his leg in walking and light activity. In that case a verdict for $15,000 was reduced to $10,000. Also, see, Turner v. Central Hardware Co., 353 Mo. 1182, 186 S. W. (2d) 603, 610, where a $15,000 verdict for a leg injury was reduced to $10,000. In the present case plaintiff suffered serious permanent injuries besides the injury to his leg. It was within the peculiar province of the jury to determine the extent of plaintiff's injuries, the loss of earning power and the damages to be awarded. This court should not disturb the verdict unless it appears to be grossly excessive. Under the evidence in this record, we do not think the verdict excessive. Young v. Terminal R. Ass'n. (Mo. Sup.), 192 S. W. (2d) 402; Turner v. Central Hardware Co., supra; Taylor v. Lumaghi Coal Co., supra.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by Dalton, C., is adopted as the opinion of the court. All the judges concur.