232 S.W.2d 177 (1950)
KELLY
v.
LAHEY.
No. 27800.
St. Louis Court of Appeals. Missouri.
July 18, 1950.
Francis R. Stout, of St. Louis, for appellant.
Joseph W. Murphy, Keegan & Rickhoff and Gregg W. Keegan, all of St. Louis, Orville Richardson, of St. Louis, of counsel, for respondent.
WOLFE, Commissioner.
This is a suit for damages arising out of personal injuries sustained by the plaintiff when a stretcher he was adjusting was *178 struck by defendant's ambulance. The Illinois Terminal Railroad Company was originally joined as a defendant but a motion for a directed verdict was submitted by it and sustained by the court at the close of plaintiff's case. The trial continued against the defendant, Francis Lahey, and the jury returned a verdict against him in favor of the plaintiff in the sum of $9,500. This amount was reduced to $6,000 after an order of remittitur by the trial court. The defendant appeals.
George Kelly, the plaintiff, was employed as an ambulance driver for the City of St. Louis. Early in the morning of December 14, 1947, he answered a call to an accident that had occurred on McKinley Bridge. A train of the Illinois Terminal Railroad had collided with an automobile at a point on the bridge slightly west of the Missouri bank of the Mississippi River.
Kelly drove the city ambulance to the scene of the accident and found there the wrecked automobile with its rear end against the south rail of the bridge and its front facing northward. He drove past the automobile and stopped about 15 feet from it. In the front seat of the automobile was an unconscious woman. The door beside her was jammed and Kelly, with the aid of policemen who were present, managed to pull it open. A metal stretcher on wheels was placed at a convenient distance from the wrecked automobile and parallel to it. Kelly put the woman upon the stretcher and fastened the breast straps over her. He then started to fasten the foot straps when an ambulance coming from the east struck the stretcher causing it to hit Kelly and to knock him back into the wrecked automobile.
It was not until after this had occurred that Kelly saw the ambulance but just prior to the time it hit the stretcher he heard some one shout and the people who were assisting him jumped aside. The police officers called as witnesses by the plaintiff testified that they saw the defendant's ambulance approaching while it was some distance away but they assumed that it would stop. As it got within about 30 or 40 feet of them it skidded on a heavy frost which covered the road surface of the bridge and ran into the stretcher.
Warning flares were burning and an employee of the Terminal Railroad some 150 or 200 feet east of the accident had attempted to flag the ambulance to a stop but its siren was sounded and it continued ahead.
Jerry Zahn, the driver of the defendant's ambulance, testified that he received an emergency call at 5:00 a. m., directing him to go to an accident on McKinley Bridge, and that he drove about two miles to the bridge. The road that he traversed on his way there was dry but the bridge surface had moisture upon it. He knew that the surface was slippery when wet as he had traveled it in all kinds of weather and he described its condition on that day as being dewy. He testified that he saw the wrecked car ahead of him when he was 150 feet east of it and slowed his ambulance down to a speed of 10 or 12 miles per hour. When he was 75 feet away he again reduced his speed and was traveling at about 4 or 5 miles per hour when he reached a point 30 feet from the wrecked car. Here he applied his brakes in an attempt to stop but the ambulance slid forward into the wrecked automobile. Zahn backed his ambulance away and the plaintiff, with the assistance of the police officers, placed the injured woman in the city ambulance and drove it to the City Hospital.
Kelly's knee and back pained him and after reaching the hospital X rays were taken of his leg after which he was sent home. A Dr. Klein was called to see him and found him complaining of pains in his back and left knee. Both of these areas were discolored by bruises on the day following. At the time of the trial Kelly still complained of pain in his back and was wearing a belt designed "to support the lumbo-sacral muscles and the sacro-iliac area".
The petition charged both specific negligence and humanitarian negligence but the plaintiff elected to go to the jury on the latter charge.
Instruction No. 2, which submitted the case to the jury under the humanitarian doctrine, predicated a verdict for the plaintiff on the failure of defendant's driver "to *179 have stopped the said automobile-ambulance, swerved the same or sounded a warning of the approach and movement of the said automobile-ambulance, and thus have avoided colliding with a stretcher which struck plaintiff". It is contended that the instruction was erroneous in that the facts did not present a case within the humanitarian rule. The defendant asserts that when we view the evidence in a light most favorable to the plaintiff it falls short of proving that the defendant's driver could have done anything to avert striking the stretcher after the plaintiff came into a position of discoverable peril.
The plaintiff himself did not see the ambulance but did hear some one shout, "Look out", immediately before it struck the stretcher. It was a police officer named Dalton that had shouted the warning and in testifying on behalf of the plaintiff he stated that he saw the ambulance coming from about two blocks distance. He was standing at the door of the wrecked car and waved his flashlight. He thought the ambulance would stop. Describing the incident further Dalton stated: "He came over with his lights blinking, and there was a lot of frost, just like a light of snow on the bridge, and he just skidded right into the whole bunch there."
Officer Silch, who was also assisting at the accident, stated that he heard the ambulance siren and looked up and saw its lights approaching. When it reached a point 40 or 50 feet away it was traveling at the rate of 15 or 20 miles per hour. Then he related: "Well, it appeared that he was applying his brakes, but it didn't stop, he was skidding, and when he got about 20 feet away, we saw he was going to hit us, and I jumped back, and, I don't know, Kelly was in between the car and the stretcher, and it happened so quick, the left side of that ambulance hit the stretcher and forced the stretcher against the car, and Kelly".
The humanitarian doctrine as it relates to the driving of automobiles on public highways embraces situations where the plaintiff, oblivious of his danger, is in a position of imminent peril of being struck by the defendant's car. After such peril is discoverable, in the exercise of the highest degree of care, the defendant is required to use the means at hand, with safety to himself, to avoid injuring the plaintiff. Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935; Wright v. Spieldoch, 354 Mo. 1076, 193 S.W.2d 42; Smith v. Fine et al., 351 Mo. 1179, 175 S.W.2d 761.
In the case of Smith v. Siedhoff, Mo.Sup., 209 S.W.2d 233, loc. cit. 236, our Supreme Court stated: "Even so much as a birds-eye view of the personal injury litigation in this state for the past three or four decades would demonstrate how widely the humanitarian rule has been sought to be invoked and applied to varying states of fact. The case made law of Missouri has widely extended the rule, far beyond its original concept. But not every state of facts resulting in injuries from moving objects gives rise to such a cause of action."
The extent to which the humanitarian rule has expanded beyond its original concept has not altered the requirement that its application is confined to the space of time after the peril is discoverable and the rule is not applicable to the negligence of the defendant prior to the time the peril arose. In other words, the antecedent negligence of the defendant is not to be considered. Lowry v. Mohn, Mo.Sup., 195 S.W.2d 652; Wright v. Spieldoch, 354 Mo. 1076, 193 S.W.2d 42; State ex rel. Sirkin & Needles Moving Co. v. Hostetter, 340 Mo. 211, 101 S.W.2d 50.
Kelly was in no position of imminent peril as he stood on the bridge with traffic being warned at each approach and police present to signal it to a stop. As a matter of fact he was in a position of relative safety. Under all of his evidence and all that presented by the defendant, Kelly's peril arose when the ambulance skidded instead of stopping. To come under the humanitarian rule there should have been some evidence upon which the jury could have concluded or inferred that after the ambulance started skidding it could have been turned or stopped or a timely warning sounded. The fact that the ambulance struck the stretche is of itself no evidence that it could have *180 been turned aside and stopped or that a warning could have been sounded. We stated in Bauer v. Wood, 236 Mo.App. 266, 154 S.W.2d 356, loc. cit. 358: "The mere fact of the Wood automobile colliding with the Bauer automobile is not of itself any proof whatever of omission of duty on defendant's part to prevent the collision after discovering plaintiff in a position of peril. The question of whether or not defendant was negligent does not depend upon a consideration after the accident has occurred of what might have been done to avoid the accident, but it depends upon what, under the then present circumstances before the accident, could reasonably have been anticipated by the defendant and provided against. * * * It is incumbent upon plaintiff to place before the jury facts from which the jury could reasonably and intelligently conclude that defendant was negligent in failing or omitting to act at a time when he could have acted to avoid the collision."
Also in point is Allen v. Kessler, Mo.Sup., 64 S.W.2d 630.
There is no question that the evidence was sufficient to submit the issue of primary negligence to the jury. There was testimony that the driver knew the bridge was slippery when wet and that he did not have the ambulance under sufficient control to stop it under the conditions known to exist. But this was primary negligence and since humanitarian negligence is not present in the case the court erred in giving instruction No. 2.
It is the plaintiff's contention that the defendant, by offering a converse instruction to plaintiff's instruction No. 2, joined in the submission of the case under the humanitarian rule and is estopped from assigning error against it. He relies upon the general rule that one party to a suit cannot complain of an erroneous instruction given for his adversary when his own instruction contains the same error of which he seeks to complain.
We are cited to four cases in support of the plaintiff's position. One of these is Billingsley v. Kansas City Public Service Co., 239 Mo.App. 440, 191 S.W.2d 331, in which case the defendant assigned error against an instruction on the plaintiff's whole case which omitted the issue of pleaded contributory negligence of the plaintiff in riding in an automobile with an intoxicated driver. The defendant had offered an instruction on contributory negligence without including the element claimed to have been erroneously omitted by the plaintiff and the court held that the defense had been waived. The defendant in that case under took to state its own conception of contributory negligence under the facts and could not, of course, be heard to complain that the plaintiff adopted defendant's idea of its own defense.
Another case cited is Zimmerman v. Salter, Mo.App., 141 S.W.2d 137, wherein the court held that the instruction complained of had been properly given. The question of waiver was not determinative of the case. Still another case relied upon is Chamberlain v. Missouri-Arkansas Coach Lines, Inc., 351 Mo. 203, 173 S.W.2d 57. There the court held that the defendant could not complain of the plaintiff's instruction when his own had expanded and broadened it. The last case cited by the plaintiff is Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54, loc. cit. 58, wherein the court stated: "It is clear that the trial court was not informed that at the time the defendant's view of the principles of liability was different from plaintiff's theory. We hold that the defendant thereby waived its right to complain that the trial court submitted an erroneous theory of recovery."
The situation in the case under consideration is not similar to those of the cases cited for here the whole cause was submitted to the jury on an erroneous theory of law. The defendant objected to the instruction for the plaintiff and apparently made known his reason. After doing this he offered a converse instruction to the one the court had indicated it was going to give. Under such circumstances the rule of waiver does not apply.
In the case of Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S.W.2d 673, loc. cit. 676, our Supreme Court after stating the rule said: "Such rule, however, *181 should be applied with discretion. The underlying reason of the rule is that one party cannot predicate error on an instruction declaring a theory of law which he himself has adopted and invited and induced the court and his adversary to adopt. It is sort of a judicial set-off of one error against a similar error, or more properly applied when the court finds that both parties have used or tried to use the same erroneous view of the law to his own advantage, in which case this court will not aid either party, but will leave them where they have put themselves."
There is nothing here to indicate that the defendant sought to use the erroneous view of law to his own advantage and the errors he complains of were not waived.
The appellant raises another point regarding the degree of care which it should have been charged. It is contended that since the accident occurred on a privately owned bridge only ordinary care was required of defendant's agent and that the court erred when it instructed the jury that he was required to use the highest degree of care. The highest degree of care in the operation of a motor vehicle on the highways of this state is required by Section 8383, R.S.Mo.1939, Mo.R.S.A. § 8383. We stated in Crocker v. Jett, Mo.App., 93 S.W.2d 74, loc. cit. 76: "It is pertinent to observe in this connection that the word `highways' is used in the statute in its popular, rather than its technical, sense, and is intended to include all highways traveled by the public, regardless of their legal status."
In the later case of City of St. Louis v. Lee, Mo.App., 132 S.W.2d 1055, we held that the Municipal Bridge of St. Louis was a thoroughfare. It follows that the bridge where the accident took place comes within Section 8383 and the highest degree of care is required of one operating a motor vehicle upon it.
There is a further contention that the judgment is excessive but the case must be retried and that point need not be passed upon. For that reason plaintiff's disability and injuries have not been fully stated. If there was no question that the amount of the verdict was proper the cause could be remanded for retrial on the sole issue of liability but such is not the case. The trial court held that the jury's verdict was excessive and directed that a remittitur be made. Since the verdict was excessive and a retrial must be had on the question of liability the case should be tried again on all of its issues. Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541.
For the error noted the judgment should be reversed and the cause remanded for a new trial, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly reversed and the cause remanded.
ANDERSON, P. J., and HUGHES and McCULLEN, JJ., concurs.