Thomas B. BECKWITH (Plaintiff),
Respondent,

v.

STANDARD OIL COMPANY, a Corporation,
and William Lee Gooding (Defendants),
Appellants.

No. 44608.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Motion for Rehearing or to Transfer to
Court en Banc Denied Sept. 12, 1955.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for defendant-appellant, Standard Oil Company.

James R. Anderson, St. Louis, for defendant-appellant, William Lee Gooding.

Dewey S. Godfrey, David F. Monahan, Jr., St. Louis, Rudolph K. Schurr, St. Louis, of Counsel, for plaintiff-respondent, Thomas B. Beckwith.

HOLMAN, Commissioner.

Action for damages arising out of an automobile collision. Plaintiff (respondent), Thomas B. Beckwith, obtained a verdict and judgment for $13,000 against defendants, Ray Konold, Jr., William Lee Gooding and Standard Oil Company for the death of his wife, and personal injuries to himself. Gooding and Standard Oil Company have appealed.

The collision occurred at about 11 p. m., on May 15, 1953, at the intersection of Brannon and Devonshire Avenues in St. Louis, Missouri. The weather was fair and the streets dry. Plaintiff and his wife were in the back seat of a Plymouth car being driven south on Brannon by defendant Konold. Kenneth Vickery was riding in the front seat with the driver. The other car involved, a Chevrolet owned by Standard Oil Company and operated by Gooding, was going west on Devonshire. This street is 40 feet wide and Brannon is about the same width or a little narrower.

Konold approached the intersection at a speed of from 30 to 35 m. p. h. When about 20 feet from Devonshire he slowed to 20 m. p. h. and, looking east, saw (according to Konold and Vickery) the Gooding car 100 feet away. He presumed he had enough time to cross safely and therefore increased his speed and proceeded across Devonshire. The collision occurred just southwest of the center of the intersection. Konold testified that his brakes were in good condition and that at 20 m. p. h. he could stop in about 25 feet, and at 30 m. p. h. in 30 or 35 feet. He did not swerve before the collision. No horn or other warning was sounded from either car. There were no stop signs at the intersection.

Gooding testified that he turned into Devonshire one block east of Brannon. He was driving in the westbound lane at a speed which was between 25 and 30 m. p. h. When about 25 feet from the intersection he saw the Konold car about 100 feet to the north on Brannon. He immediately applied his brakes and swerved to the left in an effort to avoid the Konold car. His car slid in a southwesterly direction and the cars collided. The contact was between the right front of the Gooding car and the left side of the car driven by Konold. At the time of the collision Gooding felt that his car had practically stopped. At that time Konold was going 30 m. p. h. The force of the collision turned the Gooding car over on its right side and spun it around so that it was headed east. The other car jumped the curb and slid sideways into a building on the southwest corner of the intersection. The testimony of Robert W. Wolters, a passenger in the Chevrolet, was substantially the same as that of defendant Gooding. Plaintiff's wife died on May 18, 1953, as a result of injuries sustained in the collision.

The first point briefed by defendant Standard Oil Company is that the trial

court erred in denying its motions for a directed verdict. In support of this assignment it is argued that Gooding, at the time of the collision, was not engaged in transacting any business for Standard Oil but was using the car for his own private purposes. We will accordingly state the facts bearing upon this feature of the case and about which there is no dispute.

Defendant Gooding was employed as a salesman by Standard, his duties being to call upon Standard Oil dealers and to sell them company products. He was furnished the car in question for use in his work. No permission was given to use it for other purposes. He was allowed to keep the car at his home overnight. The sales manager gave him permission to drive it from the place of making his last call in the evening to his home and, in the morning, to drive from his home to his first business call. He did not generally go to the office unless specially requested to do so.

On May 15, 1953, there was a dinner party at the Melbourne Hotel in honor of Mr. Poole, the assistant manager of the St. Louis Sales Division, who was being transferred to another locality. It was a company function and was paid for by the company. Gooding was not ordered to attend, but was told by one of his superiors that it would be a good idea for him to do so. After making his last call for the day, Gooding went to the company's office at 314 N. Jefferson, and from there to the Melbourne Hotel, at Grand and Lindell, where he attended the dinner party.

Robert Wolters was employed by Standard in the credit department. At night he attended St. Louis University Law School which is located near the Melbourne Hotel. He was invited to attend the party but declined because he had to attend school that evening. He finished his school work about 9:30 and walked to Grand Avenue to get a bus. At that time he happened to remember the party and decided to go over and congratulate Mr. Poole. Wolters visited with those present for about 45 minutes. As he started to go home he met Gooding in the lobby and either asked if Gooding were going to Kingshighway or Gooding offered to take him to that point. Gooding and Wolters were friends and at one time had attended the same school. Wolters lived at 5239 Nottingham, which is 3 or 4 miles south of Kingshighway and Lindell.

Gooding lived in Overland, in St. Louis County. In order to go from the Melbourne to his home he would drive west about 10 miles and then 4 or 5 miles north.

Upon leaving the Melbourne, Gooding first drove Mr. Jege, the sales manager, to the office of the company where he had left his car. The office was located about a mile due east of the hotel. During this ride Mr. Jege made no complaint about Wolters riding in the car. Nothing was said about it. After letting Mr. Jege out, Gooding drove west on Olive and Lindell to Taylor. At this point (which is near Kingshighway) he turned south on Taylor, saying, "Oh well, I will take you (Wolters) home." Wolters had originally intended to leave the car at Lindell and Kingshighway and take a bus to his home. Soon after turning south, Gooding got onto Kingshighway and drove south thereon for 3 or 4 miles to Devonshire and then west to the point of collision.

If defendant Standard Oil Company is to be held liable to plaintiff for the alleged negligence of Gooding, it must be under the doctrine of respondeat superior. Under this doctrine the employer is liable for the negligent acts or omissions of the employee while acting as such and within the scope of his employment. The test to be applied is not whether the negligent act was done during the term or period of employment but whether it was committed in the prosecution of the business of the employer. Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365; Stone v. Reed, Mo.App., 247 S.W.2d 325.

The only cases cited by plaintiff in support of the verdict and judgment against Standard are Guthrie v. Holmes, 272 Mo. 215, 198 S.W. 854, and State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S.W.2d 1164. These cases hold that proof that the driver is a regular employee of the employer, and that the latter owns the automobile, raises a presumption that the employee was acting

within the scope of his employment. However, these cases are not helpful to plaintiff because these and other cases go further and state that this presumption disappears upon the appearance of substantial evidence tending to show the facts. Gooding was called as a witness by plaintiff, and Wolters by defendant. Each of them testified fully concerning the facts relating to this issue. The facts shown by the evidence are undisputed and hence the determination of this issue becomes a question of law. Pesot v. Yanda, 344 Mo. 338, 126 S.W.2d 240.

■ The general rule is that an employee is not engaged in work for his master when he uses an automobile belonging to the master in going to and from his place of work. Halsey v. Metz, Mo.App., 93 S.W.2d 41. However, we are not called upon to decide the question as to whether Standard would have been liable if this collision had occurred while Gooding had been driving on a more or less direct route to his home. This, because in the instant case it is obvious that Gooding had materially deviated from that route. Brown v. Moore, Mo.Sup., 248 S.W.2d 553. Had he not decided to take Wolters home he would have gone west and north of Lindell. We have already pointed out that when the collision occurred he was about 4 miles south of that point. Also, it is clear that it was not merely a circuitous journey to his home. Gooding testified that he intended to drive back on Kingshighway to the place of departure from his usual route.

■ From what we have said it becomes clear that, on the occasion in question, it cannot be held that Gooding was engaged in the pursuit of his employer's business unless it is because he was taking a fellow employee home following a company party. In this connection it should be noted that Wolters had not been in formal attendance at the function but had casually dropped in for a brief visit towards the end of the party. Perhaps we should also mention that there is nothing in the record to indicate that Mr. Jege, or any other official of Standard, gave consent or even had knowledge that Gooding was going to take Wolters home. The testimony indicated that nothing was said by or to Mr. Jege about the fact that Wolters was in the car.

We have concluded that at the time of this collision Gooding was not discharging any duty he owed to Standard Oil Company nor was he engaged in the furtherance of its interests and was not acting within the scope of his employment. We have found no case in which the courts have extended the application of the doctrine of respondeat superior as far as we are asked to do in this case.

■ It is the general and well-established rule that the principle of respondeat superior does not apply where an employee is driving a coemployee to his home or upon a similar trip, for the accommodation of the latter, even though the automobile may be owned by their employer. Vallery v. Hesse Bldg. Material Co., Mo.App., 211 S.W. 95; Carty v. Acker, Merrall & Condit Co., 210 App.Div. 789, 206 N.Y.S. 773; Kadow v. City of Los Angeles, 31 Cal.App. 2d 324, 87 P.2d 906; Usher v. Stafford, 227 Iowa 443, 288 N.W. 432; Northup v. Robinson, 33 R.I. 496, 82 A. 392; Smith v. Turner, Tex.Civ.App., 150 S.W.2d 304; Gibbons & Reed Co. v. Howard, 129 Colo. 262, 269 P.2d 701.

In cases of this nature, it is likely that too much significance is attached to the fact that the employer owns the vehicle involved. If the car, in the instant case, had belonged to Gooding we doubt if any serious contention would have been made that Standard Oil Company was liable to plaintiff. It would have simply been a situation where Gooding was taking a friend and fellow employee home for the convenience of the latter, and it was the personal and private business of the former. Actually, that was the situation in this case.

What we have said will indicate our view that the trial court erred in denying the motions of defendant Standard Oil Company for a directed verdict.

Plaintiff, in his petition, charged defendant Gooding with various specifications of primary negligence and with humanitarian negligence in failing to stop said car or slacken the speed thereof, swerve or sound a warning of its approach. He elected to abandon the allegations of primary negligence and of failure to slacken. The cause was submitted to the jury upon Gooding's alleged humanitarian negligence in that he "did fail to stop said automobile, or swerve the same, or did fail to give warning of the approach of said automobile." This defendant now claims that the trial court erred in overruling his motions for a directed verdict.

■■ In considering this issue we must view the evidence in the light most favorable to plaintiff. When viewed in this manner we believe the evidence presented a general factual situation which was sufficient to authorize a submission on failure to stop. According to Konold and Vickery, when the Konold car was about 20 feet from the intersection, going 20 m.p.h., the Gooding car was 100 feet east of the intersection going 30 m.p.h. Gooding contends that it was error to submit his failure to stop because there was no evidence of his ability to stop his automobile after imminent peril arose. It is true that there is no direct evidence on that point. We need not decide whether there was sufficient circumstantial evidence to authorize this submission as the case must be reversed for another reason, and upon a retrial plaintiff will no doubt present direct evidence upon this issue.

This defendant next asserts that the evidence did not justify the submission of failure to swerve. The basis of this argument is that the evidence shows that Gooding did swerve as soon as he sighted Konold's car and yet the accident occurred. The difficulty with this position is that it assumes the truth and correctness of Gooding's testimony. When the evidence most favorable to plaintiff is considered we must assume that this defendant could have seen the Konold car nearing the intersection when he (Gooding) was still 120 feet from the point of impact. In this situation the jury could have found that Gooding could have swerved more effectively than he actually did. In other words, there appears to be no reason why Gooding could not have swerved to the right and thus have avoided the collision. Moreover, in swerving to the left (as he did), if he had begun the act of swerving before he permitted his car to almost reach Brannon Avenue, he could likely have turned more sharply and in that manner avoided the collision. We rule that it was proper to submit this theory of negligence.

■ Appellant Gooding contends it was error to submit failure to warn. With this we agree. Konold testified that when he was about 20 feet from the intersection he looked to the east and saw the Gooding car approaching. He continued to watch it until he reached the intersection. It is clear that he was not oblivious. He simply misjudged the speed and distance of the Gooding car and proceeded into the intersection notwithstanding its approach.

■ Obliviousness is an essential element of a humanitarian negligence case based upon a failure to warn. Pentecost v. St. Louis Merchants' Bridge Terminal R. Co., 334 Mo. 572, 66 S.W.2d 533; Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694. Under the circumstances of this case it is obvious that a warning would have served no useful purpose.

■ Since it appears clear that plaintiff failed to make a submissible case on failure to warn, it necessarily follows that the court erred in giving Instruction No. 1. The reason for this conclusion is that the three assignments of negligence were submitted in the *disjunctive* and hence if the submission of one assignment of negligence is erroneous, the instruction is erroneous because the verdict may have been based upon the erroneous submission.

Plaintiff seeks to avoid the effect of this error by asserting that defendant Gooding is estopped to complain of Instruction No. 1. It is argued that because said defend-

ant offered and the court gave an instruction which submitted the converse of Instruction No. 1, said defendant thereby adopted the theory submitted by plaintiff's instruction and cannot now contend that it was erroneous. We find no merit in this contention. The cases cited by plaintiff in support of this point are Klotsch v. P. F. Collier & Son Corporation, 349 Mo. 40, 159 S.W.2d 589; Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54; and Zimmerman v. Salter, Mo. App., 141 S.W.2d 137. The Klotsch case clearly does not support the proposition for which it was cited. The Crews case is also distinguishable because it did not involve a question of lack of evidence to support the submission but related to an erroneous statement of law. When the defendant adopted this theory he could not complain of error common to both instructions. In the Zimmerman case the question of waiver was not determinative of the case as the court held the evidence supported the submission. This case does contain a statement of dictum which tends to support plaintiff's argument. This statement, however, is not sound and was not followed or recognized by the St. Louis Court of Appeals in Kelly v. Lahey, Mo. App., 232 S.W.2d 177, and should not be considered by us.

■ The rule of waiver or estoppel clearly does not apply in the instant situation. In his motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence, defendant Gooding questioned the sufficiency of the evidence to warrant a submission of the case to the jury. He objected to the giving of Instruction No. 1. The adverse rulings were assigned in his motion for new trial. By offering a converse of plaintiff's instruction, this defendant did not concede that there was testimony to support the findings hypothesized in the instruction. The converse submission sought a verdict for defendant on the theory that the evidence did not support the instruction. It was entirely consistent with defendant's

theory throughout the trial. By seeking this instruction this defendant did not invite or induce the court to adopt the erroneous theory of the facts incorporated in plaintiff's Instruction No. 1. Kelly v. Lahey, supra.

■ The court permitted a police officer to testify on behalf of plaintiff that at the Police Station, about 30 minutes after the accident, defendant Gooding stated that he didn't see the other car until he struck it. Gooding contends that the admission of this evidence was error, citing cases relating to rules concerning the admissibility of "res gestae" statements. It is apparent that this defendant entirely misconceives the theory under which this evidence was properly admitted. This statement was an admission against interest by a party to this cause. It requires no citation of authority to indicate that such statements are admissible.

■ The only questions raised on this appeal relate to the issue of liability. No claim is made that the verdict was excessive or that the measure of damages instruction was erroneous in any respect. The statute provides that "no new trial shall be ordered as to issues in which no error appears." Section 512.160, subd. 3 RSMo 1949, V.A.M.S. It would therefore appear that the new trial against defendant Gooding should be limited to the issue of liability.

The judgment is reversed as to defendant Standard Oil Company, and reversed and remanded as to defendant William Lee Gooding for a new trial upon the issue of liability only.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.