**Cletus GERDEL and Janet Gerdel, Plaintiffs-Respondents,**

**v.**

**Ronald BROCCARD, Defendant-Appellant.**

**No. 52910.**

Supreme Court of Missouri, Division No. 2.

June 10, 1968.

Evans and Dixon, John C. Shepherd, Paul V. Gilbert, St. Louis, for respondent, Cletus Gerdel (in Defense of Counterclaim).

Robert C. Ely, St. Louis, for respondent on Plaintiff's Cause of Action.

Paul E. Fitzsimmons, Carter, Fitzsimmons & Brinker, Clayton, for appellant.

LAURANCE M. HYDE, Special Commissioner.

■ Action for $52,500.00 damages for personal injuries and property damages. Defendant had a counterclaim for $7500.00 for his injuries and property damage. The jury found for defendant on plaintiff's claim and for plaintiff on defendant's counterclaim. The court sustained plaintiffs' motion for new trial and defendant has appealed from the order granting a new trial, and from the judgment against him on his counterclaim. The amount in dispute is the original amount claimed by plaintiff, so jurisdiction is in this court, Art. V, Sec. 3, Const., V.A.M.S. and Sec. 477.040, RSMo, V.A.M.S.

Plaintiff was injured in a collision between his car and defendant's car in St. Louis when he drove his car east from Itaska on to Broadway on which defendant was driving south. Plaintiff's wife dismissed count II (consortium), and the decided issues were negligence of the parties. Therefore, Cletus Gerdel is called plaintiff. Plaintiff submitted as negligence of defendant that he violated the traffic signal or drove at an excessive speed. Defendant submitted as contributory negligence of plaintiff that he failed to keep a careful lookout or violated the traffic signal. Plaintiff's motion for new trial was sustained on ground 4 that "there was no evidence from which the jury could find that plaintiff failed to keep a careful lookout;" finding that the true issue in the case was whether plaintiff violated the traffic signal and that it was error for the instruction to authorize the jury to return a verdict against plaintiff on failure to keep a careful lookout alone even though they found he did not violate the traffic signal.

Itaska, an east-west street, does not continue beyond Broadway. It was 39 feet wide. Broadway was 48 feet wide and had two southbound lanes and two northbound lanes. It was raining and the streets were slick. Plaintiff drove east on Itaska to Broadway and stopped, intending to make a left turn to go north on Broadway. Because of the head injury he received he remembered nothing more. Plaintiff had a witness, Wesley Heacock, who was driving north on the east side of Broadway at 30 to 35 miles per hour, who said when he was 100 to 120 feet from Itaska the signal turned yellow and he reduced his speed to stop. Heacock heard the impact but had not seen either car before he heard it. He said he did not know whether the light was yellow or red at that time. However, he had made a statement, three days after the occurrence, that the light was still yellow when they hit. It was shown that the time sequence of the light was 4.2 seconds yellow and 11 seconds green. The light on Itaska does not turn green until the light on Broadway turns red. Plaintiff argues that, with Heacock slowing his car 100 to 120 feet away, the light for Broadway would have turned red before the collision. The collision caused plaintiff's car to angle across the street against Heacock's car, although he went over the curb to avoid it. The speed limit on Broadway was 35 miles per hour.

With defendant in his car were Mr. and Mrs. George Keasling and their little boy.

Keasling said he saw plaintiff's car stopped at the intersection when defendant's car was even with the bus stop on Broadway which he later measured to be 36 to 40 feet north of the north curb of Itaska. He said defendant was driving in the curb lane about 30 to 35 miles per hour. Keasling said plaintiff "pulled out into the curb lane"; that defendant then put on his brakes and swerved into the inside lane; that plaintiff "stopped in the curb lane and then he started up again"; and that the collision occurred in the inner lane with the rear of plaintiff's car still in the curb lane. Keasling had said in a deposition the light was yellow when they were about 100 feet from the intersection and that he first saw plaintiff's car at that time. (He said that after so stating he later measured the distance to the bus stop, where he said defendant's car was when he saw plaintiff.) He said the light was yellow the last time he saw it.

Defendant said he was driving 25 to 30 miles per hour and when about four car lengths (car length 18 feet) north of Itaska he saw plaintiff's car on Itaska up by the light for the crosswalk. He did not know whether it was moving or stopped. Defendant said he looked at the traffic light as soon as he saw plaintiff's car and it was green. He said he took his foot off the gas and then saw plaintiff's car two or three feet into the street. He then put on his brakes two car lengths from plaintiff's car. He said the light was yellow when his car entered the intersection; that the light was green when he was four car lengths from it but when he was about one car length from it, it was yellow. Defendant remembered applying his brakes but was not sure what happened after that. Defendant was thrown out of his car by the impact and rendered unconscious. Plaintiff had expert testimony of an engineer, Edward Bilhorn, who estimated the speed of defendant's car as 35 to 40 miles per hour at the time of the collision from the condition of the cars, when he saw them on the seventeenth day after the collision. He also said because of

"variables" in the circumstances the speed could have been lower than 35 miles per hour. Photographs of the cars involved taken after the collision do show the cars must have come together with great force.

■ Plaintiff's contention, which the court adopted in sustaining his motion for new trial, is that the only true issue is which party violated the traffic signal, saying: "[I]f the light was green for plaintiff, then plaintiff could rightfully drive into the intersection and into the path of defendant's automobile even though plaintiff did look and did see the approaching automobile of defendant." This is not the law. In Witt v. Peterson, Mo.Sup., 310 S.W.2d 857, 860, we said: "It is the duty of a motorist entering an intersection to exercise the highest degree of care to maintain a careful and vigilant lookout ahead and laterally, and to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. For where one is charged with the duty to look, and to look is to see, he must be held to have seen what looking would reveal [Citations]. A green light does not relieve of this duty, nor does it confer an absolute right to proceed across the intersection regardless of the movement of other traffic. The motorist is not entitled to rely solely on the favorable signal; nor is he entitled to drive blindly into the intersection without looking. The duty of care to be exercised remains commensurate with the circumstances, one of which, of course, is the green light in his favor [Citations]. Thus, plaintiff owed a duty to exercise the highest degree of care as he started forward with the green light and drove his car into the intersection, and this included the duty to maintain a lookout both laterally and ahead for whatever could be seen under the circumstances." We held a lookout submission was proper in that case. Likewise, in Dial v. Seven-Up Bottling Co., Mo.Sup., 373 S.W.2d 53, 56, we approved and followed the Witt case and held submission of lookout was proper in a controlled inter-

section collision case. We said the principal difference between a controlled intersection case and an uncontrolled intersection case "is that the duty to keep a lookout for other cars usually would commence earlier in the latter situation." See also Reynolds v. Consolidated Cabs, Inc., Mo. App., 374 S.W.2d 955, 959. An extensive annotation, 2 A.L.R.3rd 53, states: "[A] driver with a favorable signal may not enter blindly, may not arbitrarily exercise his right of way, does not enjoy an 'absolute' right of way, has merely a qualified or permissive right to proceed, or is required, despite his superior position, to exercise 'due', 'ordinary', or 'reasonable' care, with respect to such matters as speed, lookout, and control." Many cases are cited in which submission of lookout was held proper as to a party entering an intersection with a light in his favor. In short, plaintiff had a lookout duty even if he entered the intersection on a green light. The testimony of Keasling that plaintiff moved into the curb lane, stopped and then moved into the next lane indicates that defendant by swerving into the inside lane might have avoided a collision if plaintiff had kept a careful lookout and on seeing defendant's car remained stopped even in the curb lane. We hold it was proper to submit plaintiff's failure to keep a careful lookout.

While defendant argues that the court abused its discretion in allowing Bilhorn to testify, saying his opinion was guesswork and speculation, the only point in his brief claiming error as to his counterclaim was "because plaintiff's contributory negligence instruction directed to the counterclaim submitting excessive speed was not supported by substantial evidence." Therefore, the issue of abuse of discretion in admitting this expert testimony is not properly before us for review. Furthermore, we consider there was substantial evidence of excessive speed without regard to plaintiff's somewhat indefinite expert testimony, so we do not pass on the claim of abuse of discretion of the trial judge in admitting this testimony. We further note that Bilhorn did concede that defendant's speed might have been 35 miles per hour or less, and there was other testimony as to such speed. The testimony of defendant's passenger Keasling indicates that he was driving at or near the Broadway speed limit of 35 miles per hour although it was raining and they both described the condition of the street as slick and slippery. (Defendant had signed a statement that his speed was 35 miles per hour.) There was evidence from which it reasonably could have been found that the light turned yellow (which certainly was a warning) when defendant was far enough from it to have at least reduced his speed thereafter sufficiently to allow plaintiff to pass safely. Instead he drove into the intersection without reducing his speed until he saw plaintiff's car moving into it. "A motorist is not absolved from a charge of negligence in connection with his speed at the time of an accident by simply showing that he was not exceeding the limit allowed by law." 8 Am.Jur.2d 269, Automobiles, Sec. 717. See also 7 Am.Jur.2d 899, Sec. 353. In Kitchen v. Wilson, Mo.Sup., 335 S.W.2d 38, 45, we said a driver's "basic duty was to exercise the highest degree of care and drive his automobile at a rate of speed so as not to endanger the property or the life or limb of another person, and the speed limits provided by law are not lawful in a situation where the basic duty would be violated." See also Janicke v. Hough, Mo. App., 400 S.W.2d 645, 647; Berry v. Harmon, Mo.Sup., 329 S.W.2d 784, 789; Calvert v. Super Propane Corp., Mo.Sup., 400 S.W.2d 133, 139; Wright v. Spieldoch, 354 Mo. 1076, 193 S.W.2d 42, 46. We hold it was proper to submit excessive speed of defendant under the circumstances of this case, where defendant took no action to slow his car, going into the intersection, when the light changed from green to yellow, and there was evidence from which it could have been found that plaintiff had time and distance to do so.

The judgment for plaintiff on defendant's counterclaim is affirmed and the or-

der granting plaintiff a new trial is reversed and the cause remanded with directions to reinstate the verdict and judgment for defendant on plaintiff's claim.

PER CURIAM:

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.